OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Donald Scheiber, Vice-President of Student Life at St. John’s University (SJU), was fired from his position after 20 years of service. He commenced this action alleging, in part, that SJU terminated him because of his religious beliefs, in violation of State and Federal antidiscrimination laws, and contrary to SJU’s public assertions that it was an "equal opportunity employer.”
 
 [1]
 

 
 *124
 
 Plaintiff asserted that complaints about his job performance, and the announcement by SJU’s new President that he would prefer members of the Congregation of the Mission (Vincentians) as Vice-Presidents were pretextual, aimed at driving him out of the University because he was Jewish. Plaintiff contended that, as SJU’s only Jewish Vice-President, he was singled out for increased scrutiny by the new administration. SJU denied engaging in discrimination against plaintiff, insisting that he was terminated because of poor job performance. As an affirmative defense SJU claimed that, even assuming the truth of plaintiff’s allegations, its preference for a Roman Catholic would be constitutionally protected as free exercise of religion.
 

 According to University publications, SJU was incorporated under New York’s Membership Corporations Law in 1871 by the Vincentian Fathers, founded in 1625 by St. Vincent de Paul. The order sponsors St. John’s, Niagara and De Paul Universities, as well as high schools, seminaries, parishes and mission centers. At its groundbreaking in 1868, SJU was described as a "college for the education of youth without distinction of religious belief, political opinion, or social condition,” with the objective of offering "men and women, in a Catholic atmosphere, the opportunity to achieve for themselves a higher education in the liberal arts and sciences and to prepare for certain professions.”
 
 (Objectives of St. John’s University,
 
 1989-91 St. John’s University Undergraduate Bulletin, at iv.) While "committed to a Christian vision of reality,” SJU also claims to be "an urban institution of higher learning,” and "aims to contribute to the cultural, commercial, industrial, and professional needs and desires of the community, and in turn, to draw upon the cultural richness that a metropolitan area affords”
 
 (ibid.).
 

 Under SJU’s bylaws, the President, Vice-President for Campus Ministry and Dean of St. John’s College must be Vincentians. Nonelected Vice-Presidents are appointed by the President — subject to approval by the Board of Trustees — and serve until the President appoints a successor. No other limitation on hiring is expressed in the bylaws.
 

 Prior to completion of discovery, Supreme Court granted SJU’s motion for summary judgment under Executive Law § 296 (11) — the provision of the Human Rights Law that permits religious institutions to exercise a preference for employment of persons of the same religion. Supreme Court
 
 *125
 
 found persuasive a "rhetorical question” posed by SJU: "In light of the strong religious position taken by the Catholic church on such matters as abortion, contraception, marriage and divorce, would it be unlawful for a Catholic University to prefer that its Vice President of Student Life have the same religious convictions as that of the Catholic church?” A divided Appellate Division affirmed the grant of summary judgment to SJU dismissing plaintiff’s complaint under Executive Law § 296 (11).
 

 In its argument to this Court, SJU frames the issue by posing the same question that persuaded the trial court to dismiss the complaint. We conclude, however, that even an affirmative answer to that hypothetical issue does not entitle SJU to summary judgment against plaintiff in this case.
 

 Analysis
 

 The Human Rights Law (Executive Law art 15) effects this State’s fundamental public policy against discrimination by establishing equality of opportunity as a civil right (Executive Law § 291). The law prohibits discrimination in hiring or firing based on the "age, race, creed, color, national origin, sex, or disability, or marital status” of any individual (Executive Law § 296 [1] [a]).
 
 [2]
 

 An exemption for religious institutions appears at Executive Law § 296 (11):
 

 "Nothing contained in this section shall be construed to bar any religious or denominational institution or organization, or any organization operated for charitable or education purposes, which is operated, supervised or controlled
 
 by or in connection with
 
 a religious organization, from limiting employment or sales or rental of housing accommodations or admission to or
 
 giving preference to persons of the same religion or denomination or from taking such action as is calculated by such organization to promote the religious principles
 
 for which it is established or maintained.” (Emphasis supplied.)
 

 
 *126
 
 We reject plaintiffs threshold argument that SJU is not a "religious institution or organization” entitled to claim the exemption.
 

 Plaintiff contends that only an entity organized pursuant to the Religious Corporations Law can claim status as a religious organization under the Human Rights Law, but our statutory exemption, broadly drafted, contains no such limitation. As an educational organization operated in connection with the Vincentian order — a religious institution or organization— SJU is itself a "religious institution” within the language of Executive Law § 296 (11). Although conceived with the intent of fulfilling a secular educational role, SJU has not abandoned its religious heritage and plainly falls within the exemption for entities that are "operated, supervised or controlled by or in connection with a religious organization” (Executive Law § 296 [ll]).
 
 [3]
 

 Having determined that SJU is a religious institution within Executive Law § 296 (11), we next consider what the exemption allows.
 

 Matter of Klein (Hartnett)
 
 (78 NY2d 662, 667) provides an analytical framework for determining the scope of our statutory exemption. As noted in that case, we view an exemption for a religious employer in its statutory context in order to ascertain the intent of the Legislature. We are mandated to read the Human Rights Law in a manner that will accomplish its strong antidiscriminatory purpose. To that end, the Legislature repealed a blanket exemption for religious, educational and charitable institutions, and those organizations are now prohibited from engaging in discrimination
 
 (see,
 
 Sponsor’s Mem, 1965 NY Legis Ann, at 215-216). Section 296 (11) carved out a narrow exception for "preference ** * * in employment, housing, and admissions in order to promote the religious principles of such institutions”
 
 (see,
 
 Louis J. Lefkowitz, Mem for Governor, in Bill Jacket, L 1965, ch 851).
 

 The exemption does not license a religious employer to
 
 *127
 
 engage in wholesale discrimination. Discrimination is unlawful, whether committed by a religious or any other employer. Nor does Executive Law § 296 (11) empower a religious organization simply to discriminate against persons on the basis of religion. Rather, the exemption operates to exclude from the definition of "discrimination” exercise of a preference in hiring for persons of the same faith where that action is calculated by the institution to effectuate its religious mission. A religious employer may not discriminate against an individual for reasons having nothing to do with the free exercise of religion and then invoke the exemption as a shield against its unlawful conduct.
 

 While the exemption afforded by Executive Law § 296 (11) might permit an institution such as SJU to exercise a preference for a Catholic Vice-President of Student Life in the promotion of its religious principles, the record does not establish that this is what actually transpired in the present case. Significantly, SJU did not assert that it had, in fact, terminated plaintiff’s long employment as Dean and Vice-President of Student Life in order that it might limit his position to a Roman Catholic, or that it consciously sought and hired a Roman Catholic as his permanent replacement. To the contrary, in its verified answer SJU denied plaintiff’s allegation that the University engaged in preferential hiring, and its advertisement for a Dean of Student Life did not specify any religious limitation but noted that the University was an equal opportunity employer.
 

 While denying that it had fired plaintiff based on his religion, SJU asserted as an affirmative defense that preferential hiring of a Roman Catholic would fall within the exemption from Federal and State antidiscrimination laws. In seeking summary judgment, SJU claimed that accelerating consideration of that affirmative defense would avoid the waste of a trial, because even a finding of discrimination as alleged would be permitted conduct. In the record before us, however, there are disputed issues of fact as to whether, in firing plaintiff, the University was actually exercising the preference allowed by statute or engaging in the unlawful discrimination alleged by plaintiff. Thus, SJU did not establish a basis for summary judgment.
 

 Issues concerning a hiring decision calculated to promote religious principles of a religious institution highlight the tension between constitutional Free Exercise and Establish
 
 *128
 
 ment Clauses, as well as the potential for excessive entanglement in religious affairs
 
 (see, e.g.,
 
 Brant,
 
 "Our Shield Belongs to the Lord”: Religious Employers and a Constitutional Right to Discriminate,
 
 21 Hastings Const LQ 275 [1994]). In its present posture, this case does not draw us into those, or other, absorbing matters, for the simple reason that an undisputed factual predicate is lacking. Our resolution, therefore, properly rests on the narrower evidentiary ground.
 

 Accordingly, the Appellate Division order should be modified, without costs, by denying defendant’s motion for summary judgment as to the third cause of action and, as so modified, affirmed.
 

 Judges Simons, Smith, Levine and Mercure
 
 *
 
 concur; Judges Titone, Bellacosa and Ciparick taking no part.
 

 Order modified, etc.
 

 [1]
 

 . [1] Plaintiffs first and second causes of action, breach of contract and prima facie tort, were properly dismissed on summary judgment for the reasons stated by Supreme Court and the Appellate Division. We therefore address only his third cause of action, for abusive discharge predicated on religious discrimination.
 

 [2]
 

 . Likewise, article I, § 11 of the New York Constitution, guarantees that "[n]o person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.” No exemption for religious institutions appears in the Constitution itself.
 

 [3]
 

 . While this Court has not previously construed the term "religious * * * institution” in Executive Law §296 (11), other jurisdictions have considered the status of religiously affiliated educational institutions that serve a secular community
 
 (see, e.g., Gay Rights Coalition of Georgetown Univ. Law Ctr. v Georgetown Univ.,
 
 536 A2d 1, 8 [DC App];
 
 Pime v Loyola Univ. of Chicago,
 
 803 F2d 351, 357 [concurring opn of Posner, J.];
 
 see also, Matter of Carr v St. John’s Univ.,
 
 17 AD2d 632,
 
 affd
 
 12 NY2d 802).
 

 *
 

 Designated pursuant to NY Constitution, article VI, § 2.