[768 NYS2d 441]

In the Matter of CHARLENE POLAN, Appellant, v STATE OF NEW YORK INSURANCE DEPARTMENT, Respondent.

First Department, December 2, 2003

## APPEARANCES OF COUNSEL

*Stein & Schonfeld (Robert L. Schonfeld* of counsel), for appellant.

*Eliot Spitzer, Attorney General (David Lawrence III* and *Michael S. Belohlavek* of counsel), for respondent.

## OPINION OF THE COURT

ANDRIAS, J.

Petitioner, who has been unable to work since March 24, 1994 because of chronic depression suffered at a time she was insured under a group disability insurance policy issued to her employer, appeals from the dismissal of her CPLR article 78 proceeding brought to annul a determination of the Department of Insurance that Metropolitan Life Insurance Company (Metlife) did not discriminate against her by reason of mental disability and, therefore, did not violate Insurance Law § 4224 (b) (2).[1]

Because the Insurance Department properly concluded that the subject policy administered by Metlife did not violate the antidiscrimination provisions of Insurance Law § 4224 (b) (2) by providing more extended long-term disability coverage for physical disabilities than for mental disabilities, we affirm the implicit finding of the IAS court that respondent Insurance Department's determination was not "affected by an error of law" (CPLR 7803 [3]).

As stated by the dissent, the material facts underlying this proceeding are not in dispute and the issue presented is whether Metlife violated Insurance Law § 4224 (b) (2) by limiting long-term disability coverage in the case of disabilities caused by "mental and nervous disorders or diseases" to 24 months, unlike physical disabilities which are covered until the disability ceases or the insured reaches the age of 65.

---

**1.** Insurance Law § 4224 is entitled "Life, accident and health insurance; discrimination and rebating; prohibited inducements and interdependent sales" and provides, in pertinent part:

"(b) No *insurer* doing in this state the business of accident and health insurance . . . shall: . . .

"(2) refuse to insure, refuse to continue to insure or limit the amount, extent or kind of coverage available to an individual, or charge a different rate for the same coverage solely because of the physical or mental disability, impairment or disease, or prior history thereof, of the insured or potential insured . . . ." (Emphasis added.)

Inasmuch as petitioner offered no evidence to show that the coverage available to her, as opposed to the coverage generally available to her coemployees under the subject policy, was in any way limited, much less impermissibly limited, by reason of her disability, she failed to demonstrate that the policy violated the statute (*see e.g. Ford v Schering-Plough Corp.*, 145 F3d 601 [1998], *cert denied* 525 US 1093 [1999]; *Fermin v Conseco Direct Life Ins. Co.*, 2001 WL 685903, 2001 US Dist LEXIS 6204 [WD Tex, May 1, 2001]; *Pelletier v Fleet Fin. Group, Inc.*, 2000 WL 1513711, 2000 US Dist LEXIS 16456 [D NH, Sept. 19, 2000]; *see also McNeil v Time Ins. Co.*, 205 F3d 179 [2000], *cert denied* 531 US 1191 [2001]).

The dissent takes issue with the Insurance Department's argument that "the statute only forbids an insurer from discriminating between disabled and non-disabled persons in making coverage available," concluding instead that "[i]t applies to insurance policies that 'limit the amount' or 'extent or limit of coverage' or charge a different rate for the same coverage solely because of physical or mental disability, impairment or disease . . . of the insured." Such conclusion is belied, however, by the wording of the statute, which specifically refers to insurers, *not* insurance policies. Moreover, the statute is included in article 42, entitled "Life Insurance Companies and Accident and Health Insurance Companies and Legal Services Insurance Companies," which governs the capitalization, organization and conduct of the various types of insurers doing business in New York and defines the various types of policies that may be offered to the public.

Insurance Law § 4235, entitled "Group accident and health insurance," defines what a group accident and health insurance policy is and requires that any group accident and health insurance issued to an employer must, with or without evidence of insurability satisfactory to the insurer, insure all employees of such employer, or all of any class or classes thereof determined by conditions pertaining to employment, and provide insurance coverage for each person insured based upon some plan which will, with limited exceptions, preclude individual selection (subd [c] [1] [A]). As to the contents of a group accident and health insurance policy, including one such as the policy in issue, which insures against disablement, disease or sickness (excluding disablement which results from accident), section 4235 (b) mandates that no such policy shall be delivered or issued for delivery in New York unless it conforms to the requirements of Insurance Law § 3221.

Unlike section 4224, section 3221, entitled "Group or blanket accident and health insurance policies; standard provisions," is aptly included in article 32, entitled "Insurance Contracts—Life, Accident and Health, Annuities," which governs the form and contents of the various types of insurance policies delivered or issued for delivery in New York. Section 3221 sets certain minimum requirements for covered policies and prohibits covered insurers from establishing rules for eligibility (including continued eligibility) of any individual or dependent to enroll under a covered policy based upon his or her medical condition (including both physical and mental illnesses) (subd [q] [1] [B]). However, nothing in the section prohibits an insurer from offering different terms of coverage for physical or mental illnesses.

As noted by the dissent, the language of section 4224 (b) (2) is apparently taken from section 3 of the National Association of Insurance Commissioners' (NAIC) Model Regulation on Unfair Discrimination in Life and Health Insurance on the Basis of Physical or Mental Impairment. The statute, according to the dissent, is keyed, not to an insurer's issuance of a policy, but to the policy terms and conditions that exclude coverage or limit the same "because of" the insured's "physical or mental disability, impairment or disease" and is violated precisely because the policy in issue, in the absence of any justification "based on sound actuarial principles" or a relationship to "actual or reasonably anticipated experience," limits the amount of coverage available solely because of the nature of the disability.

However, "unfair discrimination" is a word of art used in the field of insurance which, "[i]n a broad sense . . . means the offering for sale to customers in a given market segment identical or similar products at different probable costs" (1 New York Insurance Law § 12.02 [4], at 12-13 [Matthew Bender & Co.; Wolcott B. Dunham, Jr., ed]). As stated by the NAIC's Task Force on Unfair Discrimination Against the Handicapped, which drafted the Model Regulation alluded to by the dissent:

"Section 3. Unfairly Discriminatory Acts or Practices

"The following are hereby identified as acts or practices in life and health insurance which constitute unfair discrimination between individuals of the same class: refusing to insure, or refusing to continue to insure, or limiting the amount, extent or kind of coverage available to an individual, or

charging a different rate for the same coverage solely because of a physical or mental impairment, except where the refusal, limitation or rate differential is based on sound actuarial principles or is related to actual or reasonably anticipated experience" (1979-2 NAIC Proceedings 257, 262).

Contrary to the dissent's contention that such antidiscrimination provision focuses on the policy terms and conditions, not an insurer's issuance of a policy, the Task Force, in its Drafting note to the section, specifically stated:

*"The regulation is not intended to mandate the inclusion of particular coverages, such as benefits for normal pregnancy, or of levels of benefits such as for mental illness, in a company's policies or contracts.* In virtually every state, mandates of any coverages or benefits are the subject of separate legislation. The model unfair trade practices act has never been interpreted to provide the basis for such mandates but rather to assure that such coverage and benefits as are offered by insurers are provided on a basis which is not unfairly discriminatory among individuals of the same class" (*id.* at 263 [emphasis added]).

Equally unavailing is the dissent's attempt to distinguish the Fifth Circuit's decision in *McNeil v Time Ins. Co.* (*supra*, 205 F3d 179 [2000]), which turned on its finding that the plain language of the essentially similar Texas statute required that the violation must be committed by the insurer, not by a term of the policy.

In *McNeil*, the plaintiff bought a group policy which contained no limitation on preexisting conditions and provided maximum lifetime benefits of $2 million, but limited coverage for several specific health problems, including a limit of coverage for AIDS to $10,000 during the first two years of the policy, while providing maximum benefits after that. In dismissing plaintiff's claim under Texas Insurance Code Annotated article 21.21-3, which provided that an insurer who issues a policy may not limit the amount or extent of coverage to an individual solely "because of handicap," the Fifth Circuit found that the statute focused on the conduct of the insurer. In short, the court found the statute was not violated where the insurer offered this general policy without distinguishing between individual applicants based on whether or not they had AIDS.

The dissent contends that such rationale misses the mark in that the New York statute, like the Texas statute, is keyed, not to an insurer's issuance of a policy, but to its refusal to insure or to continue to insure or its limitation of the amount, extent or kind of coverage available. Rather, the dissent contends, the statute's focus is on the policy terms and conditions that exclude or limit coverage " 'because of' the insured's 'physical or mental disability, impairment or disease.' " As noted above, however, such analysis was specifically rejected by the drafters of the Model Regulation and there is nothing in the legislative history of section 4224 (b) (2) to indicate that the Legislature intended the type of departure from the Model Regulation espoused by the dissent.[2] Indeed, that the Legislature did not intend section 4224 (b) (2) to mandate insurers to provide the same coverage for mental disabilities as for physical disabilities is evidenced by the recent report in the New York Law Journal that "advocates for a mental health parity bill are making a last-ditch effort to revive legislation staunchly opposed by the powerful insurance and business lobbies." (John Caher, *Mental Health Advocates Push for Bill*, NYLJ, Sept. 11, 2003, at 1, col 3.) The so-called " 'Timothy's Law' . . . would mandate that health insurers cover mental health similarly to the way they cover physical health" (*id.*). Obviously, if section 4224 (b) (2) already provided such coverage, such effort would be unnecessary.

As correctly found by the Department of Insurance in the determination under review, petitioner "does not allege that Metlife refused to provide to her the same LTD [long-term disability] benefits coverage as all other MetPath employees. On the contrary, Ms. Polan was eligible for the *same* package of LTD benefits provided to all employees . . . . Her complaint is that the package of benefits would have paid her more if she had incurred a different kind of disability. Nothing in Section 4224 (b) (2) requires an insurance company to provide the same benefits for all conditions. Because Ms. Polan was offered the

---

**2.** *See McNeil v Time Ins. Co., supra* at 184 n 5 ("We cannot read 'limit the amount or extent of coverage *because of* handicap' as 'limit the amount or extent of coverage for handicap.' First, 'because of' and 'for' clearly have different meanings. Second, that interpretation would raise vexatious questions for courts whenever they faced any limitation in a policy. Such a construction would require insurers to have an actuarial basis or past experience in support of every limitation on coverage for anything that could be construed as a handicap. Had the legislature intended such a drastic change in the legal requirements on the way insurers do business, we assume that it would have made that intent clearer.")

same benefits as all other MetPath employees, there has been no violation of § 4224 (b) (2)."

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Robert Lippmann, J.), entered February 19, 2002, which denied the petition and dismissed the proceeding brought pursuant to CPLR article 78 to annul a determination of respondent, dated August 22, 2001, finding that the subject policy administered by petitioner's insurer, Metropolitan Life Insurance Company, did not discriminate against petitioner by reason of mental disability and, therefore, did not violate Insurance Law § 4224 (b) (2), should be affirmed, without costs.

SULLIVAN, J. (dissenting). This appeal presents the issue of whether Insurance Law § 4224 (b) (2), which prohibits an insurer from limiting the amount, extent or kind of coverage available to an individual because of, inter alia, mental disability except where the limitation is based upon sound actuarial principles or actual or reasonably anticipated experience, applies to a long-term disability insurance policy that places limitations, not imposed on those with other disabilities, on the length of time that insureds with mental disabilities are eligible to receive benefits.

The material facts underlying this proceeding are not in dispute. Petitioner was employed in 1989 by MetPath, now known as Quest Diagnostics, Inc. As a fringe benefit, her employer provided short- and long-term disability insurance coverage to all its employees. The long-term disability benefits were provided pursuant to MetPath's long-term disability plan, which was self-insured for the first five years of a participant's disability; after five years, the Travelers Indemnity Company of Rhode Island provided the benefits under a group insurance policy issued to Corning Lab Services, Inc., MetPath's corporate parent. In 1995, Metropolitan Life Insurance Company acquired Travelers' long-term disability insurance business, and assumed responsibility for administering the insurance plan. Under the plan, coverage for insureds with physical disabilities would extend until the disability ceased or the insured reached the age of 65, whichever first occurred. In the case of disabilities caused by "mental and nervous disorders or diseases," however, coverage was limited to 24 months unless the insured was "confined in a [h]ospital or [i]nstitution"—defined as a "facility licensed to provide care and treatment for [the] condition"—at the end of the 24 months, in which case the benefits would continue until the confinement terminated.

Petitioner, first diagnosed with major depression in December 1991, suffers from a chronic psychiatric disability and has been unable to work since March 24, 1994. She received short-term disability benefits under the plan, a prerequisite to obtaining long-term disability benefits, and then applied for benefits under the long-term disability plan. In February 1995, Travelers accepted and approved petitioner's claim for long-term disability benefits retroactive to September 16, 1994. Due to the 24-month limit for benefits for mental disability, long-term disability benefits ceased to be paid to her after September 8, 1996. Petitioner still suffers from a psychiatric disability that would entitle her to benefits were it not for the 24-month limitation on benefits due to mental disability.

In June 2000, petitioner commenced an action in the Supreme Court, New York County, against Quest, Corning and Travelers, alleging that the two-year limitation on benefits for disabilities caused by mental illness violated Insurance Law § 4224 (b) (2). In pertinent part, the statute provides that a disability insurer doing business in New York shall not "refuse to insure, refuse to continue to insure or limit the amount, extent or kind of coverage available to an individual, or charge a different rate for the same coverage solely because of . . . physical or mental disability . . . except where the refusal, limitation or rate differential is permitted by law or regulation and is based on sound actuarial principles or is related to actual or reasonably anticipated experience . . . ." Supreme Court dismissed the action on the ground that Insurance Law § 4224 (b) (2) does not provide a private right of action, and that enforcement of the statute was within the province of the Superintendent of Insurance.

Petitioner subsequently filed a complaint with the New York State Insurance Department, claiming that the Travelers policy violates Insurance Law § 4224 (b) (2) in that it treats mental disability differently from other disabilities by placing limitations, not placed on those with other disabilities, on the length of time those so affected can receive benefits. The complaint stated that there was no actuarial or experiential basis for the distinction. In responding to the Department's request for an answer, the Metropolitan Life Insurance Company, the successor to Travelers, stated that Insurance Law § 4224 (b) (2) does not mandate equal benefits for all conditions and that petitioner was afforded the same benefits as all other MetPath employees. Petitioner was not afforded an opportunity to reply. The Depart-

ment rejected the complaint, finding no violation of the Insurance Law.

This CPLR article 78 proceeding challenging the Department's rejection of the complaint was thereafter commenced. Petitioner seeks vacatur of the rejection of her complaint and a direction that the Department consider whether the differentiation in benefits under the policy at issue is supported by sound actuarial principles or is related to actual or reasonably anticipated experience.[1] Supreme Court denied and dismissed the petition, finding that Insurance Law § 4224 (b) (2) had not been violated since petitioner was not discriminated against with regard to her eligibility for and access to insurance. In so ruling, the court cited the Governor's memorandum approving the bill (L 1994, ch 713; 1994 McKinney's Session Laws of NY, at 3013). I would reverse and grant the petition.

The language of Insurance Law § 4224 (b) (2) is clear and requires no interpretation from external sources. In unambiguous language, the statute prohibits an insurer doing business in New York State, as do Travelers and Metropolitan Life, from limiting the amount or extent of coverage available because of the mental disability of the insured unless that limitation is based on sound actuarial principles or is related to actual or anticipated experience. When the language of a statute is clear, "the court should look no further than unambiguous words and need not delve into legislative history" (*Matter of Lloyd v Grella*, 83 NY2d 537, 546 [1994]; *Matter of State of New York v Ford Motor Co.*, 74 NY2d 495, 500 [1989]).

Even assuming, arguendo, that the Governor's memorandum could be considered as an appropriate source were an interpretation of this clear and unambiguous statute necessary, the memorandum does not support the Supreme Court's holding that the statute only applied to access to and eligibility for in-

---

1. In its answer, the Insurance Department also asserted that the statute was inapplicable because the insurance policy was delivered or issued for delivery in New Jersey and that since petitioner's employer was self-insured for the first five years of her disability and the disability payments were due from the employer not the insurer, the payments are not subject to regulation under the Insurance Law. By reaching the merits and not relying on these threshold jurisdictional arguments, Supreme Court implicitly rejected them. In any event, they are not raised on appeal, except as a historical reference in a footnote.

surance coverage.[2] The Insurance Department's interpretation of the statute, adopted by the majority, would require a court, impermissibly, to read the words, "limit the amount, extent . . . of coverage . . . solely because of . . . mental disability" out of the statute. "[C]ourts must, where possible, give effect to every word of a statute" (*Matter of Yolanda D.*, 88 NY2d 790, 795 [1996]). Moreover, it is beyond dispute that the statute's own language that it applies to insurance policies that "limit the amount, extent or kind of coverage available to an individual" or "charge a different rate for the same coverage" as well as "refuse to insure" or "refuse to continue to insure" speaks to issues that go well beyond a mere concern over access and availability.

In support of its position that the focus of Insurance Law § 4224 (b) (2) is not on policy terms or conditions, but rather on access and eligibility, the majority quotes from the National Association of Insurance Commissioners' (NAIC) Task Force Drafting Note to the Model Regulation on Unfair Discrimination in Life and Health Insurance on the Basis of Physical or Mental Impairment, which states, "The regulation is not intended to mandate the inclusion of particular coverages . . . or of levels of benefits." This Drafting Note is irrelevant since the language of the statute is clear and unambiguous and does not require recourse to legislative history (*Matter of Lloyd v Grella*, 83 NY2d at 546) or extrinsic evidence (McKinney's Cons Laws of NY, Book 1, Statutes § 76) to divine its intent. In any event, there is no evidence that the New York State Legislature relied upon or

---

2. In the memorandum, the Governor observed that the purpose of the bill was consistent with his directive in a memorandum approving chapter 601 of the Laws of 1993, which prohibits insurers from refusing disability coverage solely because an individual has a history of breast cancer. The 1993 memorandum noted that chapter 601 was too narrow in scope since it did "not provide similar protections to persons who have survived . . . diseases [other than breast cancer] and whose prognosis is just as good as, if not better than, the prognosis for [breast cancer survivors]" and directed the development of legislation to address the situations the 1993 legislation overlooked (1993 McKinney's Session Laws of NY, at 2909). Section 4224 (b) (2) does not, however, merely extend the protection of the 1993 legislation to "persons who ha[ve] survived . . . diseases [other than breast cancer]." It is an entirely new piece of legislation which not only prohibits insurers from refusing disability coverage; it explicitly prohibits insurers from limiting the "amount, extent or kind of coverage available . . . solely because of . . . physical or mental disability." Like the 1994 Governor's memorandum approving the current legislation, the 1993 memorandum does not support the determination of the Department of Insurance or Supreme Court.

endorsed the NAIC Drafting Note in enacting Insurance Law § 4224 (b) (2).

Referring to proposed mental health parity legislation mandating that health insurers provide coverage for mental health services at the same level as for physical illness (*see* John Caher, *Mental Health Advocates Push for Bill*, NYLJ, Sept. 11, 2003, at 1, col 3), the majority concludes that if Insurance Law § 4224 (b) (2) already provided such coverage, there would be no need for the legislation. Given the interpretation of the Department of Insurance that insurers are not required to provide the same coverage for mental and physical illness, it is not surprising that there is an impetus for such legislation to insure adequate care for the mentally ill. In addition, that, in 2003, there may be legislative resistance to the parity bill (*see id.*) does not, contrary to the majority's suggestion, compel an inference that the Legislature, in 1994, did not intend to provide the same coverage for mental and physical ailments.

The policy at issue limits coverage because of the mental disability of the insured to 24 months of benefits, while not so limiting coverage for other disabilities. Under the plain wording of the statute an insurer that treats a particular disability differently from other disabilities must support such different treatment with actuarial or experiential data and cannot rely upon tradition or stereotyping for treating one type of disability differently from another.

The Insurance Department's argument, based upon federal court interpretation of similar statutes in Maine and Texas,[3] that "the statute only forbids an insurer from discriminating between disabled and non-disabled persons in making coverage available" ignores the plain wording of the statute, which does not merely speak of differences between disabled and nondisabled. It applies to insurance policies that "limit the amount" or "extent or kind of coverage" or "charge a different rate for the same coverage solely because of the physical or mental disability, impairment or disease . . . of the insured." The statute's language clearly applies to all types of unjustified treatment of a particular disability, impairment or disease and goes well beyond both the question of access to a particular policy or coverage eligibility.

---

**3.** *Pelletier v Fleet Fin. Group, Inc.*, 2000 WL 1513711, 2000 US Dist LEXIS 16456 (D NH, Sept. 19, 2000); *see also El-Hajj v Fortis Benefits Ins. Co.*, 156 F Supp 2d 27, 33 (D Me 2001); *Fermin v Conseco Direct Life Ins. Co.*, 2001 WL 685903, 2001 US Dist LEXIS 6204 (WD Tex, May 1, 2001).

The Department primarily relies upon *McNeil v Time Ins. Co.* (205 F3d 179 [5th Cir 2000], *cert denied* 531 US 1191 [2001]), which narrowly interpreted a Texas statute similar to New York's, except that it barred discrimination "because of handicap," with respect to a health insurance policy that limited the coverage period for specific health problems including AIDS. The Fifth Circuit found that, assuming AIDS was a "handicap" under the statute, the insurer did not violate the statute at the time it issued the policy or when it refused to pay more than the policy limit provided for AIDS-affected insureds since, at the time the policy was issued, the insured was not handicapped or, at the least, the insurer did not know that he was. Thus, the court held, "the limitation by the insurer could not have been 'because of handicap' " (*id.* at 184). Furthermore, the Fifth Circuit found, the insurer would not be liable even if it had known that the insured had AIDS at the time it issued the policy because the Texas statute only prevented an insurer from discriminating against an individual applicant because of handicap and the insurer had issued the policy "without distinguishing between individual applicants based on whether they had AIDS" (*id.*). Finally, the court held that since the plain language of the statute required that the violation be committed by the insurer, not by a term of the policy, the insurer did not violate the statute, "that is, limit the amount of coverage solely because of handicap, because it was merely applying a term of the policy" (*id.* at 185).

Most respectfully, the Fifth Circuit's emphasis on the issuance of the policy and the insurer's knowledge or lack of knowledge of the particular condition of the individual applying for insurance at the time of the policy's issuance misses the mark. The language of the New York statute, like the Texas statute, apparently taken from section 3 of the NAIC's Model Regulation on Unfair Discrimination in Life and Health Insurance on the Basis of Physical or Mental Impairment (4 NAIC Model Laws, Regulations and Guidelines, at 887-1 [July 1993]), is keyed, not only to an insurer's issuance of a policy but, as well, to its "limit[ation]" of the amount, extent or kind of coverage available. The statute's reach extends to policy terms and conditions that refuse or exclude coverage or limit the same "because of" the insured's "physical or mental disability, impairment or disease."

It is no justification for the use of such proscribed policy language as is at issue here to urge, as does the majority, that it

is directed not to an individual but to a class or that the class can still obtain insurance coverage for a particular condition, albeit to a lesser extent than if the particular condition were of some other type. The statute is violated precisely because the policy, in the absence of any justification "based on sound actuarial principles" or a relationship to "actual or reasonably anticipated experience," limits the amount of coverage available solely because of the nature of the disability. And, even if it were necessary to resort to extrinsic evidence to discern the identity of those for whose protection Insurance Law § 4224 (b) (2) was intended, it is clear from the Governor's 1993 and 1994 memoranda of approval that the legislation was intended to protect the disabled, as a class.

The narrow construction of the Texas and Maine statutes adopted by the federal courts should also be rejected because New York's antidiscrimination laws, such as Insurance Law § 4224 (b) (2), should be liberally construed to accomplish the strong antidiscriminatory purpose of the statutes (*see e.g. Matter of Cahill v Rosa*, 89 NY2d 14, 21 [1996] [New York Human Rights Law interpreted liberally to cover private dental offices as "places of public accommodation"]; *Scheiber v St. John's Univ.*, 84 NY2d 120, 126 [1994] [New York Human Rights Law interpreted liberally to narrow exemption afforded to religious organizations]; *Matter of United States Power Squadrons v State Human Rights Appeal Bd.*, 59 NY2d 401, 411-412 [1983] [New York Human Rights Law interpreted liberally to bar private nonprofit corporation from discriminating against women]; *see also Dornberger v Metropolitan Life Ins. Co.*, 961 F Supp 506, 547-548 [SD NY 1997] [adopting broad interpretation of Insurance Law § 4224 (a)]).

Since the policy involved here limited the amount and extent of coverage that petitioner could obtain under the policy because of her mental disability without a sound actuarial basis or actual or reasonably anticipated experience therefor, while not so limiting coverage for those with other disabilities, it runs afoul of Insurance Law § 4224 (b) (2).

Accordingly, the matter should be remanded to the Insurance Department for a determination as to whether the insurer, Metropolitan Life, which provides accident and health insurance in New York State, has an actuarial basis or experiential data sufficient to support the policy limitation on long-term mental disability coverage.

NARDELLI, J.P., and TOM, J., concur with ANDRIAS, J.; SULLI-VAN and LERNER, JJ., dissent in a separate opinion by SULLIVAN, J.

Order and judgment (one paper), Supreme Court, New York County, entered February 19, 2002, affirmed, without costs.