[814 NE2d 789, 781 NYS2d 482]

In the Matter of CHARLENE POLAN, Appellant, v STATE OF NEW YORK INSURANCE DEPARTMENT, Respondent.

Argued June 1, 2004; decided July 1, 2004

## POINTS OF COUNSEL

*Stein & Schonfeld,* Garden City (*Robert L. Schonfeld* and *Seth P. Stein* of counsel), for appellant. Insurance Law § 4224 (b) (2) applies to insurance policies limiting coverage on the basis of mental disability, and the courts below and the State Insurance Department erred in not applying the statute to the insurance policy at issue. (*Matter of Theroux v Reilly,* 1 NY3d 232; *Matter of Raritan Dev. Corp. v Silva,* 91 NY2d 98; *Riley v County of Broome,* 95 NY2d 455; *Matter of Cahill v Rosa,* 89 NY2d 14; *Scheiber v St. John's Univ.,* 84 NY2d 120; *Crane Neck Assn. v New York City/Long Is. County Servs. Group,* 61 NY2d 154; *Sparkes v Morrison & Foerster Long-Term Disability Ins. Plan,* 129 F Supp 2d 182; *Matter of Yolanda D.,* 88 NY2d 790; *Health Ins. Assn. of Am. v Harnett,* 44 NY2d 302; *People ex rel. Lewis v Safeco Ins. Co. of Am.,* 98 Misc 2d 856.)

*Eliot Spitzer, Attorney General,* New York City (*David Lawrence III* and *Michael S. Belohlavek* of counsel), for respondent. I. All available indicia of legislative intent, including the plain language of Insurance Law § 4224 (b) (2), its legislative history, and insurance industry custom and practice, demonstrate that the statute is not intended to require parity in the level of benefits made available to the physically and mentally disabled. (*Matter of Albano v Board of Trustees,* 98 NY2d 548; *Matter of Dworman v New York State Div. of Hous. & Community Renewal,* 94 NY2d 359; *Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 41 NY2d 205; *Matter of Tompkins County Support Collection Unit v Chamberlin,* 99 NY2d 328; *McNeil v Time Ins. Co.,* 205 F3d 179; *El-Hajj v Fortis Benefits Ins. Co.,* 156 F Supp 2d 27; *Riley v County of Broome,* 95 NY2d 455; *Equal Empl. Opportunity Commn. v Staten Is. Sav. Bank,* 207 F3d 144; *Rogers v Department of Health & Envtl. Control,* 174 F3d 431.) II. The circumstances surrounding Insurance Law § 4224 (b) (2)'s enactment are wholly inconsistent with a legislative intent to require a parity of benefits to the mentally and physically disabled. (*Equal Empl. Opportunity Commn. v CNA Ins. Cos.,* 96 F3d 1039; *Equal Empl. Opportunity Commn. v Staten Is. Sav. Bank,* 207 F3d 144.)

*New York Lawyers for the Public Interest, Inc.,* New York City

(*Marianne Engelman Lado, Pauline H. Yoo, James George Fela-kos* and *Janet L. Steinman* of counsel), for Association of the Bar of the City of New York, amicus curiae. I. Insurance Law § 4224 (b) (2) prohibits discrimination in the provision of benefits on the basis of disability. (*Feinstein v Bergner,* 48 NY2d 234; *Matter of Yolanda D.,* 88 NY2d 790; *Chabner v United of Omaha Life Ins. Co.,* 994 F Supp 1185; *Astoria Fed. Sav. & Loan Assn. v Solimino,* 501 US 104; *Matter of Binghamton GHS Empls. Fed. Credit Union v State Div. of Human Rights,* 77 NY2d 12; *Mowczan v Bacon,* 92 NY2d 281; *People v Sheppard,* 54 NY2d 320; *Matter of Hernandez v Barrios-Paoli,* 93 NY2d 781; *Arizona Governing Comm. for Tax Deferred Annuity & Deferred Compensation Plans v Norris,* 463 US 1073.) II. The public policy of narrowly limiting the circumstances under which persons belonging to historically disfavored classes can be subject to disparate treatment is incorporated into the antidis-crimination provisions of the New York Insurance Law. (*Scheiber v St. John's Univ.,* 84 NY2d 120; *Matter of Cahill v Rosa,* 89 NY2d 14; *Nevada Dept. of Human Resources v Hibbs,* 538 US 721; *Olmstead v L.C.,* 527 US 581; *Hazen Paper Co. v Biggins,* 507 US 604; *School Bd. of Nassau County, Fla. v Arline,* 480 US 273; *Bragdon v Abbott,* 524 US 624; *Elaine W. v Joint Diseases N. Gen. Hosp.,* 81 NY2d 211; *Lovejoy-Wilson v NOCO Motor Fuel, Inc.,* 263 F3d 208; *Chabner v United of Omaha Life Ins. Co.,* 225 F3d 1042.) III. Petitioner-appellant's reading of Insur-ance Law § 4224 (b) (2) as requiring that any distinctions in benefits based on mental disability must be supported by actuarial or experiential data is consistent with the Insurance Law and the State's regulation of the insurance industry. (*Blue Cross & Blue Shield of Cent. N.Y. v McCall,* 89 NY2d 160; *Mat-ter of Binghamton GHS Empls. Fed. Credit Union v State Div. of Human Rights,* 77 NY2d 12; *Matter of Health Ins. Assn. of Am. v Corcoran,* 154 AD2d 61; *Health Ins. Assn. v Harnett,* 44 NY2d 302.)

## OPINION OF THE COURT

READ, J.

Insurance Law § 4224 (b) (2) prohibits an insurer from limit-ing the coverage available to an individual on account of a phys-ical or mental disability unless permitted by law or regulation and statistically or empirically justified. We are asked to decide whether a long-term disability plan open to both disabled and nondisabled employees on the same terms violates this provi-

sion by failing to afford equivalent coverage for mental and physical disabilities. For the reasons that follow, we conclude that it does not.

## I.

Petitioner Charlene Polan's employer provided its employees with a number of benefits, including short- and long-term disability insurance coverage. Under the group policy issued by the insurer to petitioner's employer, coverage for physical disabilities extended until the disabled employee reached age 65 or the disability ceased. Coverage for disabilities caused by "mental and nervous disorders or diseases," however, was limited to 24 months unless the disabled employee was hospitalized or institutionalized at the end of this time period, in which event benefits continued until the employee was no longer confined.

Petitioner suffers from a chronic psychiatric disability and has been unable to work since March 24, 1994. In February 1995, the insurer accepted and approved her claim for long-term disability benefits retroactive to September 16, 1994. Although petitioner continued to suffer from a psychiatric disability, her long-term disability benefits terminated after September 8, 1996 because of the 24-month limitation.

In June 2000, petitioner commenced an action against her employer and the insurer, alleging that the 24-month limitation violates Insurance Law § 4224 (b) (2). Supreme Court dismissed the action, determining that section 4224 (b) (2) does not provide a private right of action, and is more appropriately enforced by the Superintendent of Insurance of the State of New York.

Petitioner then filed a complaint against the insurer with the New York State Insurance Department. She protested that the insurer had violated section 4224 (b) (2) by "treat[ing] mental disability differently from other disabilities without actuarial or experiential basis." The Department rejected petitioner's complaint, agreeing with the insurer that section 4224 (b) (2) does not mandate equal benefits for mental and physical disabilities, and that petitioner was afforded the same benefits as all other employees participating in her employer's group plan.

Petitioner then challenged the Department's determination in this CPLR article 78 proceeding in Supreme Court. She sought vacatur of the rejection and an order directing the Department to consider whether the difference in duration of benefits for long-term physical and mental disabilities was supported by

sound actuarial or experiential data. Concluding that the policy did not violate Insurance Law § 4224 (b) (2) by providing more extended coverage for physical disabilities than for mental disabilities, Supreme Court denied the petition and dismissed the proceeding. The Appellate Division, with two Justices dissenting, affirmed (3 AD3d 30 [1st Dept 2003]), and so do we.

## II.

When interpreting a statute, we turn first to its text as the best evidence of the Legislature's intent. As a general rule, a statute's plain language is dispositive (*see Riley v County of Broome*, 95 NY2d 455 [2000]). Further, deference to an administrative agency's "special competence or expertise" does not come into play where, as is the case here, we are called upon to decide a question of "pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent" (*Matter of Gruber [New York City Dept. of Personnel— Sweeney]*, 89 NY2d 225, 231 [1996]).

Insurance Law § 4224 (b) (2) provides, in pertinent part, that

"(b) No insurer doing in this state the business of accident and health insurance[*] . . . shall . . .

"(2) refuse to insure, refuse to continue to insure or limit the amount, extent or kind of coverage *available to an individual*, or charge a different rate for the same coverage *solely because of* the physical or mental disability, impairment or disease, or prior history thereof, *of the insured or potential insured*, except where the refusal, limitation or rate differential is permitted by law or regulation and is based on sound actuarial principles or is related to actual or reasonably anticipated experience" (emphasis added).

Nothing in this antidiscrimination provision requires an insurer to offer the same benefits for all ailments unless statistically or empirically justified.

Section 4224 (b) (2) proscribes limitations on coverage "solely because of" a particular disability, rather than limitations on coverage "for" a particular disability (*see McNeil v Time Ins. Co.*, 205 F3d 179, 184 n 5 [5th Cir 2000] [interpreting a Texas statute similar to Insurance Law § 4224 (b) (2) and stating that

---

* Insurance Law § 1113 (a) (3) defines "accident and health insurance" to include, among other things, the disability insurance at issue in this appeal.

if "because of" a disability meant "for" a disability, insurers would be required "to have an actuarial basis or past experience in support of every limitation on coverage for anything that could be construed as a handicap"]). Indeed, New York's Insurance Law consistently refers to insurance coverage "for" an insured risk rather than "because of" that risk (*see e.g.* Insurance Law § 1117 [f] [1] ["coverage for long term care services"]; § 3216 [i] [6]-[12] ["coverage for" followed by such insured risks as "in-patient hospital care," "home care," "pre-admission tests," "in-patient surgical care," "maternity care," "hospital, surgical or medical care," "physician services" and "prescribed drugs"]; § 3234 [a] [added by L 1993, ch 731, § 69] ["coverage for hospital or medical expenses"]).

Thus, in order to discriminate against "an individual" and to do so "solely because of" a disability, the insurer must somehow limit an individual's coverage by reason of that individual's disability. Here, the insurer did not adopt the 24-month limitation "solely because of" petitioner's mental disability; the limitation preceded her disability. Nor was petitioner otherwise discriminated against. She was eligible for the same long-term disability coverage at the same premium as were all other employees participating in her employer's group plan (*see McNeil*, 205 F3d at 184 ["As long as (the insurer) offered (the plaintiff) the same policy it offered everyone else, (the insurer) has not violated (the antidiscrimination statute), even assuming it knew (the plaintiff) had AIDS"]).

Insurance Law § 4224 (b) (2) is similar to the antidiscrimination statutes of several other states, including Maine and Texas. Courts have generally declined to interpret these statutes to require equivalent coverages for mental and physical disabilities (*see e.g. McNeil*, 205 F3d 179 [2000], *supra*; *Pelletier v Fleet Fin. Group, Inc.*, 2000 WL 1513711, *4, 2000 US Dist LEXIS 16456, *13 [D NH, Sept. 19, 2000] [holding that, although Maine's antidiscrimination insurance statute requires insurers to provide coverage on the same terms and conditions to disabled and nondisabled persons unless sound actuarial evidence justifies different benefits, "(t)he statutory language . . . does not limit the kind of coverage that an insurer can offer"]; *see also El-Hajj v Fortis Benefits Ins. Co.*, 156 F Supp 2d 27, 33 [D Me 2001] [holding that Maine's antidiscrimination insurance statute "neither implies nor suggests that insurers must treat the mentally disabled in the same way that it treats the physically disabled"]).

Tellingly, the Legislature chose to place the antidiscrimination provision in Insurance Law article 42, which governs insur-

ers, rather than in article 32, which mandates terms and conditions of insurance policies. For example, section 3221 provides that an insurance policy that "provides reimbursement for psychiatric or psychological services . . . [performed] by physicians, psychiatrists or psychologists" must, if requested by the policyholder, "provide the same coverage to insureds for such services when performed by a [certified] social worker" (Insurance Law § 3221 [*l*] [4] [A]). Similarly, section 3221 provides that "[e]very group or blanket policy . . . which provides hospital, surgical or medical coverage shall include coverage for maternity care . . . to the same extent that coverage is provided for illness or disease under the policy" (§ 3221 [k] [5] [A] [i]). Section 3221, unlike any provision in article 42, specifies coverage of various conditions or services, i.e., "the diagnosis and treatment of mental, nervous or emotional disorders or ailments" (§ 3221 [*l*] [5] [A]); "the diagnosis and treatment of chemical abuse and chemical dependence" (§ 3221 [*l*] [6] [A]); "equipment and supplies for the treatment of diabetes" (§ 3221 [k] [7] [A]); cancer screening (§ 3221 [*l*] [11]); and nursing home care (§ 3221 [*l*] [2]). The extensive list of statutorily mandated benefits in article 32 and the absence of any comparable list in article 42 cuts against petitioner's argument that the Legislature intended section 4224 (b) (2) to require equivalent coverage for physical and mental disabilities.

### III.

Section 4224 (b) (2) was enacted in 1994 (L 1994, ch 713) to expand the protections of Insurance Law § 3234, enacted the previous year (L 1993, ch 601) to prohibit insurers from refusing to issue a policy (or cancelling or declining to renew a policy) to an individual with a history of breast cancer (Governor's Mem approving L 1993, ch 601, 1993 McKinney's Session Laws of NY, at 2909). In approving the bill enacting section 3234, Governor Mario M. Cuomo observed that it was "too narrow in scope" because its protections were not afforded to survivors of other diseases (*id.*). Accordingly, he directed the Superintendent of Insurance and the Commissioner of Health to develop legislation to address the needs of the "situations overlooked" by the 1993 legislation (*id.* at 2910).

The following year, the Legislature enacted Insurance Law § 4224 (b) (2). In his approval memorandum, the Governor observed that the bill enacting this provision was intended to expand the access and eligibility protections of section 3234 to

"ensure that coverage and benefits are offered to all insureds on a non-discriminatory basis" (Governor's Mem approving L 1994, ch 713, 1994 McKinney's Session Laws of NY, at 3013). Likewise, Senator Dean G. Skelos, the bill's Senate sponsor, stated in relevant part that

> "this legislation amends section 4224 of the Insurance Law in regard to the *eligibility* for any life, health and disability insurance. Specifically, the bill prohibits insurance companies from unfairly discriminating by refusing to issue, renew, or limit the extent, amount or kind of coverage due to any physical or mental disability" (Bill Jacket, L 1994, ch 713, at 5 [first emphasis added]).

Assemblyman Charles O'Shea, the legislation's Assembly sponsor, observed that the bill "not only prohibit[s] the refusal to issue or cancel a policy, but also prohibit[s] the limiting of benefits covered" (Sponsor's Mem, Bill Jacket, L 1994, ch 713, at 8). As pointed out by the Department, the statute's proscription against "limit[ing] the amount, extent or kind of coverage" in this context does not mean, as petitioner argues, that an insurer must provide the same benefits for all disabilities. Rather, section 4224 (b) (2) forbids an insurer from limiting coverage by providing less generous benefits to a disabled individual than to a nondisabled individual.

The National Association of Insurance Commissioners (NAIC) Model Regulation on Unfair Discrimination in Life and Health Insurance on the Basis of Physical or Mental Impairment, which section 4224 (b) (2) mirrors, further supports this view. Section 3 of the Model Regulation describes an act or practice constituting unfair discrimination by a life or health insurer as

> "refusing to insure, or refusing to continue to insure, or limiting the amount, extent or kind of coverage available to an individual, or charging a different rate for the same coverage solely because of a physical or mental impairment, except where the refusal, limitation or rate differential is based on sound actuarial principles or is related to actual or reasonably anticipated experience" (4 NAIC Model Laws, Regulations and Guidelines, at 887-1 [July 1993]).

The Drafting Note to the Model Regulation makes it clear that

> "[t]he regulation is *not intended to mandate the*

*inclusion of particular coverages,* such as benefits for normal pregnancy, *or of levels of benefits such as for mental illness,* in a company's policies or contracts. In virtually every state, mandates of any coverages or benefits are the subject of separate legislation. The model unfair trade practices act has never been interpreted to provide the basis for such mandates but rather to assure that such coverage and benefits as are offered by insurers are provided on a basis which is not unfairly discriminatory among individuals of the same class" (*id.* [emphasis added]).

Petitioner and the dissenting Justices contend that "there is no evidence that the . . . Legislature relied upon or endorsed the NAIC Drafting Note in enacting Insurance Law § 4224 (b) (2)." (3 AD3d at 39-40.) But in determining what the Legislature—which enacted the NAIC language almost verbatim—intended, it is reasonable to consider NAIC's statement of the Model Regulation's purpose. Notably, this statement is completely consistent with the statutory language.

In short, section 4224 (b) (2)'s legislative history belies any legislative intent to insure parity of benefits for mental and physical disabilities. Instead, section 4224 (b) (2) extended section 3234's protections for individuals with a history of breast cancer to survivors of other diseases by insuring that a given insurance plan affords disabled and nondisabled individuals equal access to and eligibility for the same benefits.

## IV.

Finally, we find the federal courts' analysis of analogous federal antidiscrimination provisions to be persuasive. The federal Courts of Appeals have repeatedly concluded that the Americans With Disabilities Act ([ADA] 42 USC § 12101 *et seq.*), which prohibits discrimination in employee benefits and public accommodations "because of . . . disability" (§ 12112 [a]; § 12182 [a]), does not mandate equivalent benefits for physical and mental disabilities (*see e.g. Ford v Schering-Plough Corp.*, 145 F3d 601, 608 [3d Cir 1998] ["So long as every employee is offered the same plan regardless of that employee's contemporary or future disability status, then no discrimination has occurred even if the plan offers different coverage for various disabilities"]; *Equal Empl. Opportunity Commn. v CNA Ins. Cos.*, 96 F3d 1039, 1044 [7th Cir 1996] [observing that a 24-month

limit for mental disability benefits "may or may not be an enlightened way to do things, but it (is) not discriminatory in the usual sense of the term"]; *Krauel v Iowa Methodist Med. Ctr.*, 95 F3d 674, 678 [8th Cir 1996] [noting that excluding one disability from coverage is not a disability-based distinction violating the ADA so long as the exclusion applies equally to all individuals]; *Parker v Metropolitan Life Ins. Co.*, 121 F3d 1006, 1015 [6th Cir 1997] [noting that "the ADA does not mandate equality between individuals with different disabilities"]; *Kimber v Thiokol Corp.*, 196 F3d 1092, 1102 [10th Cir 1999] [adopting the reasoning of the other circuits and holding that "the ADA does not prohibit an employer from operating a long term disability benefits plan which distinguishes between physical and mental disabilities"]; *Lewis v Kmart Corp.*, 180 F3d 166, 170 [4th Cir 1999] [holding that "the ADA does not require a long-term disability plan that is sponsored by a private employer to provide the same level of benefits for mental and physical disabilities"]; *Weyer v Twentieth Century Fox Film Corp.*, 198 F3d 1104, 1116 [9th Cir 2000] [noting that "there is no discrimination under the (ADA) where disabled individuals are given the same opportunity as everyone else, so insurance distinctions that apply equally to all employees cannot be discriminatory"]).

Like these federal courts, we are unwilling to infer a legislative intent when to do so would upset longstanding industry practice. As the Second Circuit remarked in *Equal Empl. Opportunity Commn. v Staten Is. Sav. Bank* (207 F3d 144, 149 [2d Cir 2000]) "the historic and nearly universal practice inherent in the insurance industry [is to provide] different benefits for different disabilities." Because an interpretation that Insurance Law § 4224 (b) (2) accords the parity of benefits sought by petitioner "would require far-reaching changes in the way the insurance industry does business," we are "reluctant to infer such a mandate for radical change absent a clearer legislative command" (*id.*).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and R.S. SMITH concur.

Order affirmed, with costs.