OPINION OF THE COURT
Francis A. Affronti, J.
Presented for this court’s decision is the validity of the Rochester City School Board’s unprecedented action barring military recruiters from city schools because of the Armed Forces’ policy of excluding homosexuals from military service.
By notice of petition and verified petition, dated December 20, 1991, Jean M. Lloyd, as parent and natural guardian of David J. Lloyd, an infant, seeks a judgment, pursuant to CPLR article 78, compelling the named Commissioners of Schools for the Rochester City School District, Board of Education (hereafter Board), to perform their lawful duties as prescribed by Education Law § 2-a. Specifically, Mrs. Lloyd requests the Board be directed to provide access to the United States Armed Forces to school property, to inform students of educational, occupational, or career opportunities available in the military. The respondents oppose the application, and have submitted a verified answer and supporting affidavit, dated January 16, 1992, with attached documentation, to *414 support their position. Each party has provided a memorandum of law, and additionally, an amicus curiae brief, prepared by the New York Civil Liberties Union, in opposition to the petition, has also been received and reviewed.
David J. Lloyd is a junior at Edison Technical and Occupational Education Center, a public high school operated by the City School District. He is due to graduate in June 1993, and desires educational and other career opportunity information offered by the Armed Forces. All of the respondents, except Benjamin Douglas, are currently duly elected commissioners of schools, and comprise the Rochester City School District, Board of Education.
On December 5, 1991, the Board approved and adopted a written resolution or policy, effective immediately, "to provide reasonable guidelines governing access by recruiters to City School District students and facilities,” denoted as policy 91-92:519 (6). In relevant part, and forming the crux of this dispute, the resolution states that "[n]o organization shall be permitted in any City School District building for the purpose of recruiting City School District students if such organization has a stated policy which discriminates against any person on the basis of race, color, religion, handicap, sex, creed, political beliefs, age, economic status, or sexual orientation, until such time as these discriminatory policies are discontinued.” (Emphasis added.) Among other provisions, the resolution affords all recruiters from any organization the opportunity to conduct meetings during the school day with interested students, and makes pointed reference to the responsibility of secondary schools to annually notify students of the Armed Forces’ policy of discriminating against persons on the basis of "sexual orientation.” It also incorporates and calls direct attention to those salient portions of the Department of Defense Directive 1332.14, which states, among other verbiage, that "homosexuality is incompatible with military service.” Conspicuously, therefore, the dominant language of the resolution and its heavy-duty emphasis on military discrimination singles out the Armed Forces as the prime target or focus of the proposal.
Petitioner argues that the new resolution has the bottom line effect of denying the military and their representatives access to school buildings for purposes of dispensing educational or career information to students, and consequently, is in violation of law. This claim is denied by the respondents, who note that the resolution was passed in the exercise of their discretion so that uniform treatment of all on-campus *415 employment recruiters can be achieved. Basically, the Board argues, in corroborating its position, that no organization is permitted recruiting access if it has a stated policy of discrimination, including one based upon sexual orientation, until such policies are discontinued. Accordingly, it contends that the resolution does not conflict with Education Law § 2-a, which inarguably is the controlling statute governing this proceeding.
Ms. Lloyd rebuts the Board’s belief by asserting that to read the law as respondents do would completely eviscerate the protection that it was designed to give. In its significant aspect, Education Law § 2-a requires that boards of education or their representatives, permit "access to * * * school property” by United States Armed Forces personnel, to inform "pupils of educational, occupational or career opportunities * * * on the same basis” (emphasis added) as any other recruiters. In essence, the respondents reason that the statute’s only goal was to prevent the exclusion of the military simply because it is the military, while maintaining as well, that military recruiters are indeed permitted access if they do not foster a stated policy of discrimination, such as the one pertaining to sexual orientation. Conversely, the petitioner espouses that the statutory phrase "on the same basis” limits the Board’s discretion concerning military recruiters by guaranteeing that the armed services are accorded the same facilities and type of access as any and all other recruiters. They acknowledge, however, that the statute does permit a denial of access to military recruiters so long as all other employment recruiters are barred as well.
Preliminarily, and as previously ruled upon during oral arguments of counsel, "[w]here * * * a statutory or constitutional provision is the basis of the dispute or where discrete issues of law are present which do not involve matters of policy, review of a school board’s decision by the courts is proper” (Matter of Walker v Board of Educ., 78 AD2d 982, 983) and an "appeal to the Commissioner of Education” is not required (Stertzbach v Board of Coop. Educ. Servs., 117 AD2d 1012; CPLR 7801 [1]; Education Law § 310). In this regard, it is thus apparent that respondents’ threshold procedural objection addressing the jurisdiction of this court based on petitioner’s alleged failure to exhaust her administrative remedies is legally unmeritorious.
The Board is also of the opinion that a writ of mandamus is inappropriate in this case because it may not be *416 granted to compel the performance of a discretionary act. Although it is well settled that mandamus is improper in those instances where the exercise of judgment or discretion is allowed, the petitioner states that the Board lacked the very discretion it claims to have possessed when the December 1991 resolution was approved. (See, Matter of County of Fulton v State of New York, 76 NY2d 675.) Therefore, since petitioner raises a violation of statute, rather than the performance of a discretionary act, it is unquestionable that this court possesses the requisite authority to rule upon the substantive question presented.
At this juncture, it must be underscored that the issue to be decided by this court is solely one of law. Hence, it is not one demanding an ideological or philosophical dissertation on the wisdom, or lack thereof, of the military’s policy regarding homosexuals, nor is a critical pronouncement impugning the Board’s motives called for. Consequently, and without losing sight of this singular duty, but knowing full well that respondents’ unique and newly created policy may cause substantial public controversy, debate, and opinion, for and against its passage, the legal issue still remains very narrow and confined. Simply put, did the Board act contrary to Education Law § 2-a? The answer, by necessity, requires an interpretation of the law, which can only result after delving into and researching its legislative history and intent.
While courts must construe clear and unambiguous statutes so as to give effect to their plain meaning, a fair reading of "on the same basis,” which constitutes the heart of the contested language in Education Law § 2-a, does raise varying plausible interpretations. Does the term absolutely guarantee, as petitioner advances, school access to military recruiters, so long as all other recruiters are permitted the same access? On the other hand, does the phrase permit the school board, as they believe, the "discretion” to dictate terms and conditions applicable to all recruiters, although not definitively enunciated in section 2-a, even if those conditions result in prohibiting school access by the military? The Board’s argument is founded upon the premise that the military ban constitutes the exercise of its inherent discretionary policy-making prerogative to regulate educational and scholastic programs, which school administrators are surely entitled to do, such as monitoring academic schedules, classroom size, extracurricular activities, and the like. Indeed, boards of education do, in fact, possess "substantial legislative or quasi-legislative pow *417 ers”, for its elected representatives are entrusted with the general management and control of educational affairs, and "if not in conflict with legislation,” its rules have the force and effect of law. (See, Matter of Board of Educ. [Buffalo Council of Supervisors & Adm’rs], 52 AD2d 220, 229, n 2.)
In scrutinizing the entire background of Education Law § 2-a, the words used by the Legislature leading up to its enactment are of great benefit and assistance in attempting to ascertain its design. However, the court is not obliged or required to stop at that juncture, since not only the "spirit and purpose of the act” should be considered, but its intended objectives as well. (People v White, 73 NY2d 468, 473, citing New York State Bankers Assn. v Albright, 38 NY2d 430; Ferres v City of New Rochelle, 68 NY2d 446; see also, Association of Surrogates & Supreme Ct. Reporters v State of New York, 78 NY2d 143; Matter of Harbolic v Berger, 43 NY2d 102; Rankin v Shanker, 23 NY2d 111; Williams v Williams, 23 NY2d 592; Lincoln First Bank v Rupert, 60 AD2d 193; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 120, 125.)
State Senator Michael J. Tully, Jr., the bill’s original proponent, in his June 1984 letter to the counsel to the Governor, stated that each year "approximately 26,000 new jobs are provided to New Yorkers” through the Armed Forces, noting that the bill will "assure that young people are informed of the many financially rewarding opportunities offered by Armed Services employment.” (Bill Jacket, L 1984, ch 786; emphasis added.) Additionally, the 1984 State Assembly memorandum carefully echoed the words of Senator Tully by commenting that the bill’s "[p]urpose” and "justification” is to "ensure” (emphasis added) the military "equal access to educational institutions,” not only because of the creation of new jobs, but also because of the numerous career programs and "rewarding” educational "alternative(s)” it offers. (Bill Jacket, L 1984, ch 786.) In yet another written communication to the Governor’s counsel, in June 1984, the counsel to the New York State Assembly Majority Leader repeated the legislation’s goal. That letter emphasized that equal access by military recruiters "to educational institutions” shall be ensured because "[selective exclusions, arising primarily from a political controversy, that deny students access to particular recruiters are discriminatory in their applications and suggest a possible infringement of the spirit of the equal protection clause of the constitution.” (Bill Jacket, L 1984, ch 786.) Significantly, the correspondence firmly pronounced that *418 "[u]nless an educational institution bars all occupational recruitment of students, the military should be allowed the same accessibility as other government agencies and private corporations.”
Without question, therefore, an extensive review of the law’s history manifests a patent command, without exceptions or abridgment by local school representatives, permitting school access by the military whenever it is offered to other recruiters. Even the original opponents of the legislation interpreted the bill as requiring "mandatory access” which would remove the "autonomy and discretion of local school and campus officials to govern their own affairs”. (Mem in opposition by Student Assn of State Univ NY, Bill Jacket, L 1984, ch 786.) Similarly, the City of New York, Board of Education, in its 1984 memorandum in opposition, denoted that the proposal represented a "mandate,” prohibiting the denial of "access to school property” by the military. (Bill Jacket, L 1984, ch 786.)
The legislative history, therefore, evinces an obvious intent to guarantee or secure access by military recruiters to our high schools. Respondents’ belief that they possess discretion to impose preconditions or exclusionary criteria for access to school property by the military is without legal justification. Education Law § 2-a does not permit school boards such far-reaching clout or authority, which was clearly not contemplated or intended by the original drafters of the law. To accept respondents’ reading of the statute as bestowing upon them such unlimited power would have the legally impermissible effect of sabotaging its underlying intent. Certainly, the establishment of restrictions and criteria of the magnitude of those imposed by the Board in this instance, along with the chastising of the military’s discriminatory practices, does not equate with the setting of permissible educational policy by local boards of education.
Upon the foregoing, this court concludes and determines that the Board’s action in approving the disputed resolution on December 5, 1991, and specifically paragraph No. 2 therein, as it directly affects and impacts the military, was preempted by, and in violation of Education Law § 2-a. In this respect, therefore, the legal relief requested by the petitioner is granted. The Board of Education must perform the duties imposed upon it by law and provide the military the same access to school property as other recruiters are afforded for *419 purposes of informing students of "educational, occupational or career opportunities” (Education Law § 2-a), regardless of the military’s policy concerning homosexuals.
Any and all other relief sought by the petitioner is herewith denied.