83 N.Y.2d 537 (1994)
634 N.E.2d 171
611 N.Y.S.2d 799
In the Matter of Jean M. Lloyd, as Parent and Natural Guardian of David J. Lloyd, an Infant, Respondent,
v.
Karen Grella et al., as Commissioners of Schools for the Rochester City School District Board of Education, Appellants.
Court of Appeals of the State of New York.
Argued March 17, 1994.
Decided May 3, 1994.
Donald T. Schmitt, Rochester, and Adam D. Kaufman for appellants.
Regan & Regan, P. C., Rochester (John M. Regan, Jr., of counsel), for respondent.
Arthur Eisenberg, Ruth E. Harlow, New York City, and William B. Rubenstein, of the Pennsylvania and District of Columbia Bars, admitted pro hac vice, for American Civil Liberties Union and another, amici curiae.
John D. Feerick, New York City, Janet Gallagher, Arthur S. Leonard, Sara L. Mandelbaum and James M. Williams for The Association of the Bar of the City of New York, amicus curiae.
Curtis J. Berger, Carl C. Monk, New York City, and Victor L. Streib, of the District of Columbia Bar, admitted pro hac vice, for the Association of American Law Schools, amicus curiae.
Evan Wolfson, New York City, Robinson Silverman Pearce Aronsohn & Berman (Carey Wagner and Timothy W. Reinig of counsel) and Harry B. Bronson, Rochester, for Lambda Legal Defense & Education Fund, Inc., and another, amici curiae.
Jay Worona, Albany, and Shari Greenleaf for the New York State School Boards Association, Inc., amicus curiae.
William E. Fay, III, New York City, for Parents for the Restoration of Values in Education, amicus curiae.
Deborah A. Batts, New York City, Mary C. Daly, James L. Kainen and Russell G. Pearce for The Society of American Law Teachers, amicus curiae.
Chief Judge KAYE and Judges TITONE, SMITH, LEVINE and CIPARICK concur with Judge BELLACOSA; Judge SIMONS dissents and votes to affirm in a separate opinion.
*542 BELLACOSA, J.
The Rochester City School Board resolved that employers, including the military, who discriminate on the basis of sexual orientation or other reasons shall be barred from school site student recruitment. Education Law § 2-a grants military recruiters access to educational venues "on the same basis" as all other employment recruiters.
Petitioner Lloyd, on behalf of her son who has graduated from the Rochester schools, sued, urging that Education Law § 2-a invalidates the Rochester City School Board Resolution. The Supreme Court, whose judgment and opinion were adopted by the Appellate Division, agreed and granted the petition, in effect allowing unqualified military access. This Court granted leave to appeal and now reverses and dismisses the petition. We hold that Education Law § 2-a does not override the local Resolution.

I.
In August 1984, Education Law § 2-a was enacted to ensure equal access for the military to educational institutions so that students would be able to acquire direct information about military employment opportunities (L 1984, ch 786). The law was enacted to overcome the particular discriminatory exclusion of the military from schools for recruitment purposes. Education Law § 2-a states in part:
"Notwithstanding any other provision of law to the contrary, if a trustee, president, principal, * * * or a board of education * * * permits the release of directory information relating to pupils or permits access to school buildings, school grounds or other school property to persons who inform pupils of educational, occupational or career opportunities, such trustee, president, principal, officer, board or administrator shall provide access to directory information relating to pupils and access to such school property on the same basis for official representatives of the state militia and the armed forces of the United States for the purpose of informing pupils of educational, occupational or career opportunities within the state militia or armed forces of the United States" (emphasis added).
*543 In December 1991, the Rochester City School District Board of Education adopted a Resolution denoted as Policy 91-92:519 (6). Undeniably, the Policy is directed largely at the military's open, long-standing and uncontroverted discriminatory policies. Its interdiction of the military's recruitment opportunities at school sites includes in relevant parts:
"2. No organization shall be permitted in any City School District building for the purpose of recruiting City School District students if such organization has a stated policy which discriminates against any person on the basis of race, color, religion, handicap, sex, creed, political beliefs, age, economic status, or sexual orientation, until such time as these discriminatory policies are discontinued" (Resolution: Policy 91-92:519 [6] [¶ 2]).
"8. All secondary schools have the responsibility of notifying students annually of the Armed Forces policy of discriminating against persons on the basis of sexual orientation, as stated in Department of Defense Directive 1332.14, or as subsequently amended or modified, which provides, in pertinent part, that: `Homosexuality is incompatible with military service.'" (Resolution: Policy 91-92:519 [6] [¶ 8].)
"9. This policy does not prohibit the dissemination of information to students by school counselors about the Armed Forces and how to contact the Armed Forces about career opportunities.
"The notice requirement of paragraph `8' shall be provided to students through inclusion in individual building handbooks and through written notification distributed to students by building school counselors, simultaneous with the provision of information about the Armed Forces" (Resolution: Policy 91-92:519 [6] [¶ 9]).
The Policy gives direct emphasis to the salient portions of the Department of Defense Directive 1332.14 (32 CFR part 41, Appendix A, part 1 [H]), which include the assertion that "[h]omosexuality is incompatible with military service" (Resolution, op. cit., [¶ 8]). The Rochester Resolution does, also, generally bar any organization that has a stated policy that discriminates against protected classifications.
Parent and natural guardian Lloyd, on her son's behalf, *544 seeks a judgment compelling the officials of the Rochester school system to allow mandated duties and admit military employment recruiters to their school sites. Supreme Court granted the petition, holding in part:
"Respondents' belief that they possess discretion to impose preconditions or exclusionary criteria for access to school property by the military is without legal justification. Education Law § 2-a does not permit school boards such far-reaching clout or authority, which was clearly not contemplated or intended by the original drafters of the law. * * * Certainly, the establishment of restrictions and criteria of the magnitude of those imposed by the Board in this instance, along with the chastising of the military's discriminatory practices, does not equate with the setting of permissible educational policy by local boards of education.
"Upon the foregoing, this court concludes and determines that the Board's action in approving the disputed resolution on December 5, 1991, and specifically paragraph No. 2 therein, as it directly affects and impacts the military, was preempted by, and in violation of Education Law § 2-a. In this respect, therefore, the legal relief requested by the petitioner is granted. The Board of Education must perform the duties imposed upon it by law and provide the military the same access to school property as other recruiters are afforded for purposes of informing students of `educational, occupational or career opportunities' (Education Law § 2-a), regardless of the military's policy concerning homosexuals" (151 Misc 2d 412, 418-419 [emphasis in original]).
The Appellate Division affirmed "for reasons stated in decision at Supreme Court" (190 AD2d 1026).
The issue is whether Education Law § 2-a mandates unqualified military access, thus negating the Rochester Resolution. The Court is unanimous that the Resolution would have to yield should it conflict with higher organic law, the State statute (see, Board of Educ. v Licata, 42 N.Y.2d 815). We hold, however, that the statute does not have that effect. Rather, it specially protects military recruiters by granting them equal access. It does not correspondingly divest local school boards *545 of their traditional discretionary powers to adopt protocols barring stated discriminatory policies and practices such as are at issue in this case. The use of the phrase "on the same basis" in Education Law § 2-a is synonymous with "equal access", not unqualified access. Thus, mandamus does not lie to void the Resolution-Policy, because Education Law § 2-a does not dictate the unequivocal and exclusive preeminence that the prior courts and the dissent would accord to it.

II.
Schools are allowed to establish policies applicable to all organizations desiring access to school facilities on a uniform basis. Education Law § 2-a was enacted to protect equal access by military recruiters, not give them unqualified or preferential access (compare, Matter of Doe v Rosa, 159 Misc 2d 694; see also, Gay & Lesbian Law Students Assn. at Univ. of Conn. v Board of Trustees, Univ. of Conn., 1992 WL 310610 [Conn Super Ct, Oct. 14, 1992]). Rochester Policy 91-92:519 (6) at issue here bars access to all recruiters when they fail to meet specified criteria tailored for the Rochester school system. The fact that it significantly targets a concededly discriminatory entity does not divest it of its uniform applicability.
We must also deal, however, with the question whether a policy that includes a special impact on military recruiters clashes with the intent of the Legislature promulgated in Education Law § 2-a. We think there is no such direct conflict and conclude that the school board here exercised a discretionary power to exclude all recruiters engaging in promulgated discrimination, as the still-evolving military policy does.
We acknowledge that our holding eliminates Education Law § 2-a as an obstacle to the challenged Policy which bars discriminating military recruiters and others from schools in Rochester. On the other hand, the holding of Supreme Court, as affirmed by the Appellate Division, if allowed to stand, would grant the military unenacted and unintended universal access by an overarching interpretation of Education Law § 2-a. That construction, which would give undue preference to military recruitment, finds no support in an equal access statute, designed as "a narrow and legitimate jurisprudential" shield, not as an unlimited sword of entry (Braschi v Stahl Assocs. Co., 74 N.Y.2d 201, 214, 215 [Bellacosa, J., concurring]).
Some bromides of statutory construction are also helpful in analyzing this case. When the language of a statute is clear, *546 effect should be given to the plain meaning of the words used (see, Matter of State of New York [Abrams] v Ford Motor Co., 74 N.Y.2d 495; Matter of Alonzo M. v New York City Dept. of Probation, 72 N.Y.2d 662, 665). In such instances, the court should look no further than unambiguous words and need not delve into legislative history (Matter of State of New York [Abrams] v Ford Motor Co., 74 N.Y.2d 495, supra; Sega v State of New York, 60 N.Y.2d 183; Van Amerogen v Donnini, 156 AD2d 103; Matter of Cristo Bros., 97 AD2d 274, affd 64 N.Y.2d 975; McKinney's Cons Laws of NY, Book 1, Statutes §§ 76, 92). "[O]n the same basis" is a plain meaning phrase which, on its face, supports the conclusion we reach.
Even if we agree with Supreme Court's premise that the phrase "on the same basis" is susceptible to "varying plausible interpretations," we would disagree with its reasoning and conclusion that the "legislative history * * * evinces an obvious intent to guarantee or secure access by military recruiters to our high schools" on the preferential basis found here (151 Misc 2d, at 416, 418, affd 190 AD2d 1026, supra). That would fly in the face of the "on the same basis" qualification.
In any event, we conclude that the legislative history supports access only upon similar terms and conditions as are allowed to other prospective employers. It does not support something denominated broadly and unqualifiedly as "guaranteed access." The New York State Assembly Memorandum in Support of Legislation (Bill Jacket, L 1984, ch 786) states that the purpose or general idea of the bill is:
"[T]o allow military recruiters equal access to educational institutions and directory information where access and such information is supplied to other recruiters offering educational and/or occupational opportunities."
Senator Tully, the bill's sponsor, argued that "this bill merely allows military recruiters equal access to educational institutions and directory information where that access is afforded to other recruiters in the private sector" (NY State Senate Debate, 1984, at 3109). Assembly Member Flanagan added:
"[W]e are not guaranteeing by this bill, freedom of speech or recruitment for all other recruiters. For that matter, we are not guaranteeing freedom of recruitment for one single recruiter. What this bill is designed to do is to say if you are a recruiter for the United States Military Forces, that you are a *547 first-class citizen, and that a campus cannot deny you access on the basis, solely, of the fact that you are a military recruiter. The people that wanted this bill came to see me in my office, and I said, `You know, I don't want to get involved with telling the schools what to do'" (New York State Assembly Debate, June 12, 1984, at 181).
Plainly, when school board policymakers exclude recruiters "on the same basis," like those who statedly discriminate against homosexuals, the statute's special admittance pass for the military is not operative. It does not override the evenhanded exclusion of all employers who proclaim their discriminatory policies.
We are also satisfied that the holdings of the Appellate Division and the Supreme Court undermine well-settled principles protecting the discretion traditionally reposed in local school districts regarding access to students on school property. The long-standing deference afforded local school boards to exercise ultimate authority for access to students, school buildings and school property generally is well founded (see, Education Law § 414 [1] [Board of Education may adopt "reasonable regulations" for the use of school facilities]; Trietley v Board of Educ., 65 AD2d 1, 6, quoting Stein v Oshinsky, 348 F.2d 999, 1002, cert denied 382 US 957 ["(d)etermination of what is to go on in public schools is primarily for the school authorities"]; Matter of Budney v Niagara Falls Bd. of Educ., 38 Misc 2d 825; Matter of Ellis v Allen, 4 AD2d 343, appeal dismissed 4 N.Y.2d 693; but see, Board of Educ. v Licata, 42 N.Y.2d 815, supra).
This feature of our analysis adds persuasive support for our holding. The military may recruit on Rochester school grounds "on the same basis" as any other employer when it conforms to the nondiscriminatory practices and policies applicable to all recruiters. The statute and the Policy are not in conflict in that regard and can be read and interpreted as compatible when properly so read and interpreted. In effect, we confidently conclude that Education Law § 2-a does not tolerate the contradiction of encouraging the efforts of schools in inculcating an abhorrence of discrimination, while compelling the admittance of openly discriminating potential employers.
Mandamus is not available here because the Policy enacted by the local school board was a permissible discretionary *548 action not in contradiction of or forbidden by Education Law § 2-a (Education Law § 414 [1] [Board of Education may adopt "reasonable regulations" for the use of school facilities]; § 2-a; see also, Matter of County of Fulton v State of New York, 76 N.Y.2d 675, 678; Matter of Hamptons Hosp. & Med. Ctr. v Moore, 52 N.Y.2d 88, 96).
Accordingly, the order of the Appellate Division should be reversed and the petition dismissed, with costs.
SIMONS, J. (dissenting).
The State Legislature has declared that military recruiters must be allowed "access to * * * school property on the same basis" as other occupational recruiters (Education Law § 2-a). The Rochester School Board allows recruiters generally on school property but adopted a policy designed to deny access to those the Legislature has decreed are entitled to access: the military. The majority recognizes the obvious fact, found by the courts below, that the Board's action was a deliberate effort to bar military recruiters notwithstanding the statute but finds no fault with it.
Thus, the issue before the Court is whether the Board may do that which the State statute specifically bars it from doing  discriminate against the military in its recruiting policy. Clearly, it may not. The majority avoids that obvious result by miscasting the Board's policy as a facially neutral measure aimed at all discriminating employers. That rationale fails for three reasons. First, by its very terms, the policy does not bar "all organizations that discriminate"; instead, it bars only those organizations that have a stated policy of discrimination. The difference is significant. Because some types of discrimination mentioned in the policy are illegal under State law, no employer seeking to recruit in the Rochester schools will ever have a stated policy of discrimination, except the military. Second, despite the majority's assurances to the contrary, the Board's policy simply is not facially neutral. While paragraph 2 is stated in neutral terms applying to all recruiters (Resolution: Policy 91-92: 519 [6] [¶ 2]), the other relevant parts of the policy deal exclusively  and expressly  with only one employer, the military. Paragraph 8 and paragraph 9, for instance, set forth special recruiting rules and state that they apply solely to the military (see, majority opn, at 543). Third and most important, even if this policy were facially neutral, the Board's compliance with Education Law § 2-a should be judged by the substance and effect of the policy not by its *549 mere form. In a variety of circumstances, our Court and the Supreme Court of the United States have declared that facially neutral provisions will be invalidated when either their motive or their effect is illicit discrimination (see, e.g., Gomillion v Lightfoot, 364 US 339, 347; Matter of Board of Educ. v New York State Div. of Human Rights, 56 N.Y.2d 257, 261-262; Matter of 303 W. 42nd St. Corp. v Klein, 46 N.Y.2d 686, 696). Here, both the Board's motive and the effect of its resolution were discriminatory. The resolution mentions only one employer  the military  by name, and at oral argument, the Board's attorney was unable to name any other recruiter that would be affected by it. As a matter of fact, only one employer will ever fall within the policy's prohibition against a "stated policy" of discrimination. In short, the Board decided to discriminate against the military because it disagreed with a military policy enacted by Congress. Such discrimination against the military is precisely what Education Law § 2-a prohibits.
It will not help to cast the decision as a discretionary one, as the majority has done. The Board has no discretion to do that which the statute prohibits. Nor is the case stronger because the resolution is viewed as a weapon against the military's discriminatory recruiting policies. Those policies were surely known to the legislators at the time the statute was proposed and they were not then, nor are they now, contrary to State or Federal law as construed by our Court or the Supreme Court.
Nor can this decision be supported by the statutory language permitting the even-handed regulation of recruiters. The statute provides for access to school property on the same basis, i.e., equivalent time and under equivalent terms. It does not permit local autonomy on the desirability or undesirability of individual employers' lawful employment policies, marketing practices or product line.
In sum, the local Board has, for its own reasons, done that which the Legislature has said it may not do and the resolution is therefore void.
Order reversed, etc.