OPINION OF THE COURT
Robert R. Reed, J.
This action concerns the question of whether the provisions of the Rent Stabilization Law governing high rent deregulation apply to apartments which are rent-stabilized as a result of the property owner’s receipt of tax benefits, pursuant to section 421-g of the Real Property Tax Law, and/or low interest mortgage loans, pursuant to the Private Housing Finance Law.
Defendants B.C.R.E.—90 West Street, LLC (B.C.R.E., or the owner) and Lee Rosen move, pursuant to CPLR 3212, for an order (1) granting defendants summary judgment in their favor on: (a) plaintiffs’ first, second, third, fourth, fifth and sixth causes of action; (b) defendants’ first counterclaim declaring that plaintiffs’ apartments are deregulated and not subject to rent regulation; (c) defendants’ second counterclaim and awarding them a money judgment against plaintiffs for attorneys’ fees in an amount to be determined by the court; and (2) granting defendant Lee Rosen summary judgment and dismissing the case against him.
Plaintiffs William T. West et al. cross-move, pursuant to CPLR 3212, for an order: (a) granting them partial summary judgment and declaring that their apartments are subject to rent stabilization, that plaintiffs are rent-stabilized tenants of their apartments, and that the rents charged for their apartments since the commencement of their tenancies have been and continue to be unlawful; and (b) ordering a prompt trial to determine the amount of rent overcharges and other damages, preceded by discovery, if the court deems it necessary.
Letitia James, the Public Advocate for the City of New York; New York State Senators Daniel L. Squadron, Tony Avella, Martin Malave Dilan, Adriano Espaillat, Jesse Hamilton, Brad Hoylman, Liz Krueger, Kevin S. Parker, Jose Peralta, Bill Perkins, Gustavo Rivera and James Sanders, Jr.; Assembly Members Deborah J. Glick, Richard N. Gottfried, Rodneyse Bichotte, Marcos Crespo, Pamela Harris, Walter T. Mosley, N. Nick Perry, Diana C. Richardson, Annette Robinson, Linda B. *430 Rosenthal, Rebecca A. Seawright, and Latrice Walker; and New York City Councilmembers Inez Barron, Margaret Chin, Robert Cornegy, Daniel Dromm, Daniel R. Garodnick, Vanessa L. Gibson, Ben Kallos, Annabel Palma, Antonio Reynoso, Ydanis Rodriguez, Deborah Rose, Helen Rosenthal, and Jumaane D. Williams submit a brief amicus curiae in opposition to defendants’ motion for summary judgment.
Plaintiffs are tenants in a 24-story building located at 90 West Street, New York, New York, which is owned by B.C.R.E. and managed by Rosen. The complaint alleges that, in March 2005, the building was converted from commercial to residential use and reopened for occupancy. The complaint further alleges that, in or around March 2005, the owner applied for and obtained tax benefits for the building under RPTL 421-g, and, in or about February 2006, secured a low interest mortgage, pursuant to article XII of the Private Housing Finance Law, offered by the Housing Development Corporation (HDC).
Plaintiffs assert six causes of action for: (1) a declaration that their apartments are subject to the Rent Stabilization Law and a determination of the amount of legal regulated rent for their respective apartments; (2) a declaration that any leases for subsequent terms offered to plaintiffs are invalid unless they are on forms prescribed by the New York State Division of Housing and Community Renewal (DHCR) and the Rent Stabilization Law; (3) an injunction prohibiting defendants from seeking to terminate or otherwise interfere with plaintiffs’ tenancies based upon the expiration of their current leases; (4) an award for rent overcharges, interest, and penalties in relation to such overcharges; (5) injunctive relief pursuant to General Business Law § 349 (h); and (6) attorneys’ fees.
Real Property Tax Law
In order to encourage private investment for the purpose of revitalizing Lower Manhattan, in 1995, the New York State Legislature enacted RPTL 421-g which provides tax abate-ments and other benefits for residential conversion and redevelopment of obsolete commercial buildings in the area. Section 421-g requires that, in return for the receipt of tax benefits, apartments in buildings receiving the benefits be governed by the Rent Stabilization Law. Section 421-g states, as follows:
“[n]otwithstanding the provisions of any local law for the stabilization of rents in multiple dwellings *431 or the emergency tenant protection act of nineteen seventy-four, the rents of each dwelling unit in an eligible multiple dwelling shall be fully subject to control under such local law, unless exempt under such local law from control by reason of the cooperative or condominium status of the dwelling unit, for the entire period for which the eligible multiple dwelling is receiving benefits pursuant to this section . . . .’’(RPTL 421-g [6].)
The statute further provides that, after the benefits received by the owner have terminated,
“such rents that would not have been subject to such control but for this subdivision, shall be decontrolled if the landlord has included in each lease and renewal thereof for such unit for the tenant in residence at the time of such decontrol a notice in at least twelve point type informing such tenant that the unit shall become subject to such decontrol upon the expiration of benefits pursuant to this section.” (Id.)
At the time plaintiffs entered into their respective leases, none of plaintiffs’ apartments were, or are now, being treated as rent-stabilized apartments by the owner, and none of plaintiffs’ leases contain a rider or notice pursuant to RPTL 421-g. Plaintiffs contend that, pursuant to both RPTL 421-g and Private Housing Finance Law § 654-d, their apartments should be treated as rent-stabilized by the owner.
The owner argues, however, that in stating that “the rents of each dwelling unit in an eligible multiple dwelling shall be fully subject to control under such local law,” the legislature intended that the apartments would be subject to all provisions of the Rent Stabilization Law. According to the owner, such provisions include the provisions for high rent deregulation, which, at the time that the owner bought and converted the building for residential use, provided that vacant apartments with a rent above $2,000 would not be subject to rent stabilization. (See Rent Stabilization Law of 1969 [Administrative Code of City of NY] § 26-504.2; Rent Stabilization Code [9 NYCRR] § 2520.11 [r] [4].) Defendants further contend that the language regarding the exception in section 421-g, which states that the apartment “shall be fully subject to control under such local law, unless exempt under such local law from control by reason of the cooperative or condominium status of the dwelling unit” (emphasis added), was used purely for clarification, and *432 was not meant to exclude other bases for deregulation, such as luxury deregulation.
In support of their contention, defendants note that two other provisions of the RPTL (§§ 421-a, 489), which link rent stabilization protections for apartments covered by tax benefits under those statutes, contain the same “notwithstanding” and “exempt” language. Defendants contend, however, that the only reason that high rent deregulation does not apply to section 421-a and 489 tax benefits is that such deregulation is expressly prohibited by Rent Stabilization Code (9 NYCRR) § 26-504.2 (a), which states that the high rent deregulation provision does not apply to housing accommodations that become subject to rent stabilization pursuant to RPTL 421-a or 489. Defendants contend that because Rent Stabilization Code (9 NYCRR) § 26-504.2 does not mention section 421-g, the provision at issue here, high rent deregulation applies to housing receiving section 421-g tax benefits. Although recognizing that when Rent Stabilization Code (9 NYCRR) § 26-504.2 (a) was added to the Code, section 421-g had not yet been enacted, defendants contend that the legislature could have added section 421-g at a later date, when other provisions were added to the Rent Stabilization Code, but did not do so. Defendants quote the court in Brusco v Armstrong (191 Misc 2d 272, 274 [App Term, 1st Dept 2001]) for the proposition that “[w]hen the Legislature has specified the cases to which its enactment shall apply, and has failed to specify other particular cases, it is fair to conclude that the exclusion was intended.” However, as the Court of Appeals stated in Roberts v Tishman Speyer Props., L.P. (13 NY3d 270, 287 [2009]), “[legislative inactivity is inherently ambiguous and affords the most dubious foundation for drawing positive inferences” (internal quotation marks and citations omitted).
As Justice Edmead recently stated in holding that high rent deregulation does not apply to buildings receiving section 421-g benefits, defendants’ argument
“is untenable, because, if adopted, it would render the introductory ‘ [n] otwithstanding’ phrase, which defendant ignores, superfluous. That phrase clearly refers to provisions in the [Rent Stabilization Law] and the Emergency Tenant Protection Act of 1974, such as the high rent and high income decontrol provisions enacted in the Rent Regulation Reform Act of 1993 (RSL § 26-504.3), that are contrary to *433 the regulation of rent.” (Kuzmich v 50 Murray St. Acquisition LLC, 2017 NY Slip Op 31416[U], *3 [Sup Ct, NY County, July 3, 2017].)
Defendants further contend that the difference in the legislative treatment of the tax abatement under sections 421-a and 421-g, and the J-51 program creates an ambiguity, justifying the reliance on legislative history to clarify the intent of the legislature in its drafting of section 421-g. Defendants argue that the legislative history establishes that the legislature intended that high rent deregulation would apply to buildings receiving section 421-g benefits. They rely particularly on a letter from then Mayor Rudolph Giuliani, dated August 16, 1995, read into the record by Senator Leibell, and the response of Senator Joseph Bruno, dated August 31, 1995. The Giuliani letter states, in pertinent part:
“The City’s intention has always been that dwelling units in property receiving benefits under the residential conversion program (bill section 14) and the mixed-use program (bill section 15) would be subject to rent stabilization to the same extent as, but to no greater extent than, other rent regulated property. Any provision of law that generally exempts any housing accommodation from rent stabilization would apply as well to dwelling units in property receiving benefits under the aforementioned programs. Thus, the provisions of the Rent Regulation Reform Act of 1993 that provide for the exclusion of high rent accommodation and for high income rent decontrol would apply to property receiving benefits under the programs created by the Lower Manhattan legislation. Any future amendments to the rent stabilization law would also apply to these properties.
“The City agencies responsible for administering the residential conversion and mixed-use programs will promulgate rules that reflect our intention to apply the rent stabilization law as a whole, including any provisions that exempt housing accommodations from rent stabilization, to property receiving benefits under those programs.” (Letter from Rudolph Giuliani to Hon. Joseph Bruno, Aug. 16, 1995 at 1.)
The Bruno letter replying to Mayor Giuliani states, in pertinent part:
*434 “Your letter notes that the city specifically intended that residential property receiving benefits pursuant to programs created in this legislation be fully subject to the deregulation provisions established by the Rent Reform Act of 1993. I am gratified that your intent comports with the Senate’s own reading of this legislation and I appreciate your willingness to clarify this issue. In view of your comments and the importance of this legislation to the revitalization of Lower Manhattan, the Senate will pass this bill when it reconvenes in October.
“While this legislation represents an important step toward forging a new economic revival in Lower Manhattan, further reform of City rent regulation laws is equally important to achieving the goal of long-term economic revitalization. As you know, I have long advocated the importance of such reform and introduced legislation that culminated in the adoption of luxury de-control measures by the Legislature in 1993. The current system, must be overhauled.” (Letter from Senator Joseph L. Bruno to Hon. Rudolph W. Giuliani, Aug. 31, 1995.)
Defendants further point to the statement of Senator Franz Leichter, who cast the one negative vote against the bill in the Senate, where he expressed concern that apartments subsidized by the legislation would have rents above $2,000 and would not be rent-stabilized. (NY Senate Debate on Senate Bill S5320, Oct. 12, 1995 at 12377.)
In construing a statute, “[t]he primary consideration of the courts . . . is to ascertain and give effect to the intention of the Legislature.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a].) “When construing a statute, we seek to discern and give effect to the Legislature’s intent, and the starting point for accomplishing this is the statute’s language. If the language is ambiguous, we may examine the statute’s legislative history.” (Roberts v Tishman Speyer Props., L.P., 13 NY3d at 286 [citations omitted].) However, “ ‘[w]hen the language of a statute is clear . . . the court should look no further than unambiguous words and need not delve into legislative history.’ ” (Matter of RCN N.Y. Communications, LLC v Tax Commn. of the City of N.Y., 95 AD3d 456, 457 [1st Dept 2012], quoting Matter of Lloyd v Grella, 83 NY2d 537, 545-546 [1994].)
Here, this court does not find the language of section 421-g to be ambiguous. Rather, as plaintiffs argue, and as Justice *435 Edmead concluded in Kuzmich v 50 Murray St. Acquisition LLC, the statutory language is clear.[1] The “notwithstanding” language in section 421-g (6) means that provisions of the Rent Stabilization Law, and other local laws which would limit the applicability of rent stabilization, do not apply. The only exception to the requirement, that units receiving tax abatements under the statute be “fully subject to control under [the Rent Stabilization Law],” is, as the statute states, for units which are “exempt under such local law ... by reason of the cooperative or condominium status of the dwelling unit.” (RPTL 421-g [6].)
As noted above, defendants seek to avoid this clear language by arguing that, in stating that the units would be “fully subject to control under such local law,” the legislature meant “all of the provisions of the [Rent Stabilization Code] including the luxury deregulation provisions.” (Defendants’ amended mem in support at 2.) However, “ [n]ew language cannot be imported into a statute to give it a meaning not otherwise found therein.’ ” (Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, 104-105 [1997], quoting Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382, 394 [1995], and McKinney’s Cons Laws of NY, Book 1, Statutes § 94 at 190.)
Because the court finds no ambiguity in the language of the statute, it is neither necessary, nor appropriate, to turn to the legislative history, as defendants urge. However, even if the court were to do so, the legislative history is far less clear than defendants contend, and Justice Hagler concluded in Henry 85 LLC. Although the Giuliani and Bruno letters were part of the record prior to the vote on the legislation by the Senate, they postdate, by more than one month, identically worded legislation passed by the Assembly on June 28, 1995. Therefore, those letters were not considered by the members of that body when it passed the legislation, and do not reflect the legislative history of the bill in the Assembly. Moreover, “a hindsight, post-enactment review of legislative intent by a non-legislator . . . would carry no probative weight.” (American Libs. Assn. v Pataki, 969 F Supp 160, 170 n 5 [SD NY 1997]; see also Wallace v State of New York, 40 F Supp 3d 278, 314 n 34 [ED NY 2014] *436 [“isolated statements of . . . individual legislators—and, more so, non-legislators—contained within the legislative history cannot establish legislative intent” (internal quotation marks and citation omitted)].)
Furthermore, the memorandum in support of the legislation submitted by the Office of the Mayor to the Assembly, dated May 30, 1995, signed by Robert M. Harding, Legislative Representative, states, with respect to the residential conversion program, that “[d] welling units in the buildings receiving benefits under this program would be subject to rent stabilization during the benefit period.” (See notice of cross motion, exhibit O, Mem in Support to Assembly at 2.) That memorandum in support makes no mention whatsoever of an exception to rent stabilization for high rent apartments.[2] Furthermore, a memorandum in support, dated June 15, 1995, with identical language regarding the applicability of rent stabilization, was submitted to the Senate by Robert M. Harding on behalf of the Office of the Mayor. Only the Giuliani letter actually mentions exemptions to rent stabilization (other than for cooperatives and condominiums as specified in the statute).
Plaintiffs submit the affirmation of Martin E. Connor, who was a member of the Senate at the time the legislation was adopted and who, as the Senate Minority Leader, was the lead sponsor of the Senate Bill, which was identical to the bill previously passed by the Assembly. Connor states that Mayor Giuliani’s interpretation of RPTL 421-g
“contradicts the plain and clear language of the statute; ignores the State’s long history of tying tax benefits to rent regulation; and disregards the State’s long established policy of not allowing building owners to use public funds to subsidize the deregulation of apartments or the consequent reduction of affordable housing in New York City.” (Notice of cross motion, exhibit N, ¶ 12.)
As Connor points out, in 1995, when section 421-g was enacted, “most units in buildings receiving § 421-g benefits would have been newly constructed or rehabilitated with initial monthly rents above $2,000.” (Id. ¶ 29.) Thus, interpreting section 421-g to contain a high rent deregulation exception would render the rent stabilization protection virtually meaningless. In fact, defendants indicate that 25,000 apartments, which *437 were created as a result of section 421-g, were not registered with DHCR because their rents were above $2,000, and only approximately 2,500 rent regulated apartments were created. (See aff of Lee Rosen ¶ 21.) Furthermore, when the owner applied for and received section 421-g benefits, only 140 of the 410 apartments in the building were rent regulated. Many of those, including five of the apartments rented by plaintiffs, were treated by the owner as deregulated, after vacancy increases brought the rents above the $2,000 per month threshold for high rent decontrol. (Id. f ¶ 22, 30.)
Defendants also argue that the two administrative agencies having jurisdiction over the issue, DHCR and the New York City Department of Housing Preservation and Development (HPD), have both consistently interpreted section 421-g as allowing high rent deregulation, as Mayor Giuliani indicated in his letter that they would. In 1997, noting that section 421-g does not specifically mention the issue of high rent deregulation, DHCR merely issued an opinion letter, referencing the Giuliani and Bruno correspondence and stating that “[w]e have examined the bill jacket, and we find nothing differing from this interpretation.” (Letter from Charles Goldstein, Associate Counsel DHCR to Sherwin Belkin, Esq., dated Jan. 30, 1997 at 1.)
In 1997, HPD adopted a regulation creating an exception to the applicability of rent stabilization to apartments receiving section 421-g benefits. The HPD regulation quotes the language of the “notwithstanding” paragraph of section 421-g which states that “the rents of each dwelling unit in an eligible multiple dwelling shall be fully subject to control under such local law.” (RPTL 421-g [6].) HPD, however, inserts in the statutory language the phrase, “except Exempt Dwelling Units.” (28 RCNY 32-05.) The very fact that HPD found it necessary to insert that exception into the legislature’s language merely emphasizes the fact that no such exception was enacted by the legislature. Moreover, as the Court of Appeals stated in Roberts,
“where the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations . . . And, of course, if the regulation *438 runs counter to the clear wording of a statutory provision, it should not be accorded any weight.” (Roberts v Tishman Speyer Props., L.P., 13 NY3d at 285 [internal quotation marks and citations omitted].)
Therefore, the court does not owe deference to the interpretation of the statute by DHCR or HPD.
Finally, defendants cite the decision of the Housing Part in UDR 10 Hanover LLC v Aaron (Civ Ct, NY County, Hous Part, Feb. 1, 2016, Stoller, J., index No. LT-069437-15/NY), in which the court interpreted section 421-g as containing an exception for high rent deregulation, based largely on the letter of Mayor Giuliani discussed above. The court did so, however, stating that the conflicting arguments of the parties created an ambiguity which permitted the court to rely on the legislative history to interpret the statute. This court notes that, in the case of W. Assoc., LLC v Scott (Civ Ct, NY County, Hous Part, Dec. 23, 2009, Scheckowitz, J., index No. L & T 73831/2009) a different Housing Part judge concluded that “[biased on the plain language of the statute, respondent’s apartment is afforded rent stabilization protection because petitioner receives tax benefits under the 421-g program.” The owner argues that the court in W. Assoc, may not have been provided with the legislative history of the statute, but, as this court has discussed above, where the language of the statute is clear, which this court believes it is, the legislative history is irrelevant. Furthermore, for the reasons discussed above, this court has concluded not only that it is inappropriate to rely on legislative history to interpret section 421-g, but that the Giuliani and Bruno letters do not necessarily accurately portray the intentions of the legislature in enacting section 421-g. Moreover, as noted above, most recently, Justice Edmead, of this court, has ruled not merely that the language of the statute is clear and that it is unnecessary to consider the legislative history, but that the high rent deregulation provisions of the Rent Stabilization Law do not apply to buildings with section 421-g tax benefits. (Kuzmich v 50 Murray Street Acquisition LLC.)
For these reasons, this court declines to follow the recent decision in Henry 85 LLC v Roodman, and concludes that RPTL 421-g does not contain an exception to rent stabilization for high rent deregulation, and that plaintiffs’ apartments were *439 and are subject to rent stabilization for as long as the owners are receiving benefits pursuant to RPTL 421-g.[3]
Private Housing Finance Law
Plaintiffs also argue that the protections of rent stabilization apply to their apartments because the owner received a low interest mortgage financed by HDC. Private Housing Finance Law § 654-d (18) contains language similar to that in RPTL 421-g. Apartments in buildings receiving low interest mortgage loans pursuant to the Private Housing Finance Law are, similarly, made subject to the Rent Stabilization Law, as follows:
“Notwithstanding the provisions of, or any regulation promulgated pursuant to, the emergency housing rent control law, the local emergency housing rent control act or local law enacted pursuant thereto, all dwelling units in a multiple dwelling the rehabilitation of which commenced after July first, nineteen hundred seventy-seven and which is financed by a mortgage loan insured by the subsidiary corporation (including, but not limited to, mortgage loans insured pursuant to mortgage insurance contracts and housing insurance contracts), except for dwelling units occupied by reason of ownership of stock in a cooperative and except for dwelling units that constitute condominiums, shall be subject to the rent stabilization law of nineteen hundred sixty-nine, beginning immediately after initial rents, as established under applicable provisions of this chapter, section four hundred twenty-one-a of the real property tax law, [and] section four hundred eighty-nine of the real property tax law . . . .” (Private Housing Finance Law § 654-d [18].)
Defendants argue that Private Housing Finance Law § 654-d (18) was enacted before high rent deregulation was enacted, and that when high rent deregulation was enacted, the legislature specifically exempted buildings receiving section 421-a and J-51 tax benefits, and did not similarly exempt build *440 ings receiving Private Housing Finance Law § 654-d (18) benefits. Therefore, according to defendants, high rent deregulation does apply to buildings receiving low interest mortgages. However, since Private Housing Finance Law § 654-d (18) states that dwelling units shall be subject to rent stabilization “as established under . . . section four hundred twenty-one-a of the real property tax law [and] section four hundred eighty-nine of the real property tax law,” it was unnecessary to add a reference to section 654-d (18) benefits in the Rent Stabilization Code. This, of course, is consistent with the overall approach that the receipt of tax and mortgage interest benefits by the landlord would be linked with rent stabilization protections for tenants.
Given that the court concludes that plaintiffs’ apartments are governed by the Rent Stabilization Code pursuant to RPTL 421-g and Private Housing Finance Law § 654-d, it is not necessary to reach the parties’ additional discussion concerning the impact of the regulatory agreement.
Motion to Dismiss Lee Rosen as Defendant
Finally, defendants move for summary judgment dismissing Rosen as a party defendant, based on the fact that, at all times, Rosen was working solely as the registered managing agent for the owner and, therefore, could not be personally liable for any alleged rent overcharges. Plaintiffs quote Administrative Code § 27-2004 (a) (45), which includes an “agent, or any other person, firm or corporation, directly or indirectly in control of a dwelling” in the definition of “owner,” to argue that Rosen is an owner, and, therefore, potentially liable to plaintiffs for rent overcharges.[4] However, the First Department has rejected a claim for rent overcharges against a managing agent, stating:
“the managing agent of the premises ... is not liable for any portion of the [rent] overcharge. As stated by the Court of Appeals, an agent for a disclosed principal will not be personally bound unless there is clear and explicit evidence of the agent’s intention to substitute or superadd his personal liability for, or to, that of his principal.” (Crimmins v Handler & Co., 249 AD2d 89, 91-92 *441 [1st Dept 1998] [internal quotation marks and citation omitted]; see also Paganuzzi v Primrose Mgt. Co., 181 Misc 2d 34, 36 [Sup Ct, NY County 1999], affd 268 AD2d 213 [1st Dept 2000].)
Since plaintiffs have made no allegations that Rosen acted as other than a managing agent for the owner, Rosen’s motion for summary judgment to dismiss, as to him, is granted. Accordingly, it is hereby
Ordered that the motion of defendants B.C.R.E.—90 West Street, LLC and Lee Rosen for summary judgment is denied, except to the extent that it is hereby
Ordered that the motion of defendant Lee Rosen for summary judgment to dismiss the complaint herein as against him is granted, and the complaint is dismissed in its entirety as against said defendant, with costs and disbursements to said defendant as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of said defendant; and it is further
Ordered that the action is severed and continued against the remaining defendant; and it is further
Ordered that the caption be amended to reflect the dismissal and that all future papers filed with the court bear the amended caption; and it is further
Ordered that counsel for the moving party shall serve a copy of this order with notice of entry upon the County Clerk (room 141B) and the Clerk of the Trial Support Office (room 158), who are directed to mark the court’s records to reflect the change in the caption herein; and it is further
Ordered that the motion of plaintiffs William T. West, Elisa Beagley, Vered Behr, Matthew Bradshaw, Bridget Caster, Frederick A. Cucciniello, John Furste and Sarah Furste, James Harrington and Melissa Harrington, Hiroko Matsumoto, Gregory Montagna, Christian Nielsen, Chisaram Nkemere and Claire Schlissel, Preston B. Price and Roberto Di Cuia, Nicholas Oram, Matthew D. Orgera, Mohammed Sharaf, Jared Truco and Sarah Voigt, Reggie Uduhiri and April Uduhiri, Renee Williams and Mark Williams, and Katy Yang and Mai Li, Julie D’Ancona, Sunita Deshrande, Adrienne Ekern, Liudmila Fila-tova, Shea Hougland, Juan C. Mealla and Maria Mealla, Jeanne Moore, Gavin Robert Sweitzer, Ketan Vakil and Elizabeth Vakil, Donna Valencia and Michele Orlando, Nancy Wall, Norman Yu and Mark Zaguskin, Luke O’Dowd, Jennifer Wu, *442 and Petra Kass for partial summary judgment is granted to the extent that it is hereby
Declared that plaintiffs’ respective leases are governed by rent stabilization; and it is further
Ordered that the court, having on its own motion determined to consider the appointment of a referee to determine as follows, and it appearing to the court that a reference to determine is proper and appropriate pursuant to CPLR 4317 (b), in that an issue of damages separately triable and not requiring a trial by jury is involved, it is now hereby
Ordered that a Judicial Hearing Officer (JHO) or Special Referee shall be designated to determine the following individual issues of fact, which are hereby submitted to the JHO/ Special Referee for such purpose:
1. the amount that each plaintiff has been overcharged, said amounts to be calculated as follows: the lowest rent registered, pursuant to Rent Stabilization Code (9 NYCRR) § 2528.3, for comparable apartments in the building located at 90 West Street in Manhattan, that were in effect on the date that said plaintiffs first occupied their apartments; or, if defendant did not register the rents of comparable apartments in said building, such amount to be based upon data compiled by the New York State Division of Housing and Community Renewal, using sampling methods for regulated housing accommodations;
2. the amount of attorneys’ fees and costs properly incurred by the plaintiffs in litigating this action; and it is further
Ordered that the powers of the JHO/Special Referee shall not be limited further than set forth in the CPLR; and it is further
Ordered that this matter is hereby referred to the Special Referee Clerk for placement at the earliest possible date upon the calendar of the Special Referee Part (SRP), which, in accordance with the Rules of that Part, shall assign this matter to an available JHO/Special Referee to determine as specified above; and it is further
Ordered that counsel shall immediately consult one another and counsel for plaintiff shall, within 15 days from the date of this order, submit to the Special Referee Clerk by fax (212-401-9186) or email an Information Sheet (which can be accessed at the “References” link on the court’s website) containing all the information called for therein and that, as soon as practical thereafter, the Special Referee Clerk shall advise counsel for *443 the parties of the date fixed for the appearance of the matter upon the calendar of the Special Referees Part; and it is further
Ordered that the plaintiff shall serve a prehearing memorandum within 24 days from the date of this order and defendants shall serve a prehearing memorandum within 20 days from service of plaintiffs’ papers, and the foregoing papers shall be filed with the Special Referee Clerk at least one day prior to the original appearance date in Part SRP fixed by the Clerk as set forth above; and it is further
Ordered that the hearing will be conducted in the same manner as a trial before a Justice without a jury (CPLR 4320 [a]) (the proceeding will be recorded by a court reporter, the rules of evidence apply, etc.) and that the parties shall appear for the reference hearing, including with all such witnesses and evidence as they may seek to present, and shall be ready to proceed on the date first fixed by the Special Referee Clerk, subject only to any adjournment by the Special Referee Part in accordance with the Rules of that Part; and it is further
Ordered that, except as otherwise directed by the assigned JHO/Special Referee for good cause shown, the trial of the issue specified above shall proceed from day to day until completion; and it is further
Ordered that counsel for plaintiffs shall serve a copy of this order with notice of entry within 20 days of entry on all counsel.

. Like the court in Kuzmich, this court disagrees with the recent decision in Henry 85 LLC v Roodman (2017 NY Slip Op 31606 [U] [Sup Ct, NY County, May 15, 2017, Hagler, J.]), in which Justice Hagler found the language of section 421-g to be ambiguous and ruled that high rent vacancy decontrol does apply to buildings receiving tax benefits under RPTL 421-g.

. The memorandum in support contains nearly identical language with respect to units in mixed-use buildings. (Id.)

. Furthermore, in order to terminate the protections of rent stabilization when section 421-g benefits end, the owner must, going forward, include a notice in the lease, as specified in the statute, informing the tenant that the unit shall become subject to such decontrol upon the expiration of the benefits.

. Plaintiffs also cite Rent Stabilization Code (9 NYCRR) § 2520.6 (i), which includes “any other person or entity receiving or entitled to receive rent for the use or occupation of any housing accommodation, or an agent of any of the foregoing” within the definition of owner.